JOHN C. SNYDER *et ux. vs.* ZONING BOARD OF THE TOWN OF WESTERLY.

MAY 7, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

140

JOSLIN, J. This is a petition for certiorari to review the decision of the zoning board of the town of Westerly disapproving the petitioners' plan for a proposed subdivision of their land. The writ was issued and in compliance therewith the board has made due return to this court of the pertinent records.

The plan seeks approval for a subdivision into eighteen residential dwelling lots of approximately eleven acres of land located in a highly-valued residential community of the Watch Hill Fire District, hereinafter referred to as Watch Hill. It was submitted to the zoning board pursuant to chap. 22, sec. 20, of the town ordinances. The special enabling legislation pursuant to which that chapter was enacted is P. L. 1922, chap. 2299, as amended by P. L. 1925, chap. 746, which added sec. 9(d) empowering the zoning board "to pass upon applications for the approval of proposed sub-divisions of land into building lots * * *." In passing upon applications thereunder, however, the board acts as a planning board and not as a zoning board and performs, subject to the cited statutory and ordinance provisions, a function equivalent to that performed by a planning commission under G. L. 1956, chap. 23 of title 45.

The tract of land proposed to be subdivided is designated "Brentwood Estates" and is situated in an R-1 residential district, the relevant dimensional requirements of which prescribe a minimum lot size and width of 20,000 square feet and 100 feet respectively. The area of the lots range from 20,033 square feet to slightly in excess of 34,500 square feet.

The public hearing required by the ordinance was duly advertised for and held on August 13, 1963. A summary of the proceedings at the board's meeting held on that day was prepared by its secretary and is incorporated in a copy of the minutes which has been certified to us in lieu of a transcript. No contention is made that the synopsis is not sufficiently complete and accurate to meet our requirements.

*Robinson* v. *Town Council*, 60 R. I. 422. Also certified as a part of the record are copies of minutes of board meetings held on June 12, July 10, and September 18, 1963. The minutes of the meetings held prior to August 13 are not germane because they antedate the public hearing. The board's decision as well as a purported recapitulation by the secretary of the substance of what transpired at the August meeting are contained in the September minutes. Insofar as that restatement is at variance with the August minutes, the latter controls. What we review, therefore, on this petition is limited to the minutes of the August meeting and the decision.

The summary of the proceedings of the August meeting discloses that real estate experts, representatives of local groups, and numerous persons owning land in Watch Hill either in person or by counsel testified or made statements. In addition, communications from other property owners and a real estate expert as well as a petition signed by approximately seventy taxpayers have been included as exhibits. Those verbal and written expressions, excepting only for those of one of the petitioners and her attorney, were as one in objecting to the application. Their common theme is that the surrounding property in Watch Hill will be degraded and the interests of the owners of large neighboring estates adversely affected if the plan is approved. The consensus is that Watch Hill should be kept in its present state, an objective opined to be impossible of achievement if residential dwellings are allowed to be constructed on lots of less than one acre.

The board denied the application on the following grounds: (1) that four of the lots do not meet the 100-foot minimum width requirement for an R-1 zone; (2) that the subdivision is inconsistent with the general topography of the land in the area and that the elevation of the proposed road on the plan would incur steep grades thereby resulting

142

in serious drainage problems; (3) that houses built on the lots would incur serious sewerage disposal problems due to the topography of the land; (4) that petitioners neglected to file a profile thereof showing location, width and grades of a proposed street as required by statute; and (5) that the plan is not in accord with a reasonable development of the area and with the existing character of Watch Hill.

There is nothing in the record supportive of the first ground. An examination of the subdivision plan reveals that each lot has a frontage of less than but a width of more than 100 feet. The board obviously misconceived the meaning of the word "width" which is a dimension measured from side to side at right angles to length, *State ex rel. Keane* v. *Board of County Commissioners,* 83 Mont. 540, Webster, Third New International Dictionary, p. 2614, whereas "frontage" is defined as the extent of a lot abutting on a street, *Standard Oil Co.* v. *Kamradt,* 319 Ill. 51, Webster, *supra,* p. 914. It was error to treat them as synonymous.

The second and third grounds can be considered together. No provision of chap. 22 has been called to our attention which authorizes the board to consider sewerage or drainage conditions on an application for approval of a subdivision plan, but even on the assumption that it has such power, its exercise thereof must be based on evidence of probative force. The only record reference to a possible sewerage disposal problem resulting from topography of the land or otherwise comes from an owner of a house located close to Brentwood Estates who testified that "he has sewer trouble * * *." No inference can reasonably be drawn therefrom that houses built on the proposed subdivision lots will be similarly affected nor is there anything in the record upon which the board could properly determine that steepness of the grade of the proposed street would cause drainage difficulties.

As a consequence of the lack of record evidence to support these findings, the board seeks justification therefor on knowledge it acquired when it viewed Brentwood Estates, but it does not divulge what it saw on that inspection. The bald statements that there will be drainage and sewerage disposal problems without disclosure of the observed conditions or land characteristics do not constitute the kind of probative evidence capable of sustaining the board's decision. *Dawson* v. *Zoning Board of Review,* 97 R. I. 299, 197 A.2d 284; *Kelly* v. *Zoning Board of Review,* 94 R. I. 298, 180 A.2d 319.

It may well be that the grade will cause serious drainage difficulties or that the topography of the land will make it difficult or impossible to dispose of sewerage, but there is nothing in the decision to indicate whether these conclusions are founded on the isolated statement we have quoted, or on what the board observed on its view. Moreover, both the August minutes and the decision are barren of matter descriptive of either the grade or the topography. In these circumstances we can only speculate or conjecture as to the foundations upon which these two grounds rest and this we will not do. *Lescault* v. *Zoning Board of Review,* 91 R. I. 277.

The fourth ground advanced by the board is noncompliance by petitioners with the statutory prerequisites for the filing with it of a profile of streets or ways shown on the plan. The board misconceives the requirements of the pertinent portion of P. L. 1923, chap. 538, sec. 1, as amended, which provides that "No plan of any private land * * * showing thereon a street or way as open or to be opened, to travel or otherwise dedicated for public use, shall hereafter be accepted for filing or record by the town clerk * * * unless such street or way shall have been first approved by the zoning board * * *." The statute makes the filing of such a profile with the zoning board a requirement for the

dedication of a street or way for public use. It does not prescribe compliance as a condition precedent to approval of a proposed subdivision, although once such approval has been granted submission of a profile will be necessary if petitioners avail themselves of the procedures of chap. 538.

The final ground for the board's disapproval is that the proposed subdivision is not in accord with the reasonable development and the existing character of Watch Hill.

Implicit in this finding is the board's recognition and adoption of the sentiments of those who testified that the large estates of Watch Hill would be degraded by action which might result in the construction of eighteen dwelling houses in Brentwood Estates, each located on a lot less than one acre in area. This is further evinced by the vote at the August 13 meeting to recommend to the town council that the minimum lot size requirements of 20,000 square feet for R-1 areas in Watch Hill be increased.

The issue before the board, however, was not the desirability of the preservation of Watch Hill's existing status, but its jurisdiction to deny approval to a proposed subdivision because of an insufficiency in house-lot areas notwithstanding that in each instance the minimum lot size requirements of the zoning ordinance were exceeded.

The board apparently relies on chap. 22, sec. 20, subparagraph 3, of the ordinances as enabling it to deny approval of a subdivision plan because of a deficiency in lot areas. By that section it is authorized to approve the area of building lots. The power there conferred, however, does not stand alone and must be construed within the framework of P. L. 1922, chap. 2299, as amended by P. L. 1925, chap. 746, sec. 1 of which provides that the town council is "empowered to regulate and restrict * * * the size of lots * * *." When thus considered, it becomes abundantly clear that the board's power to approve the size of building lots is limited in extent to ameliorating or varying in favor of

a landowner the lot-size requirements of the zoning ordinance and does not constitute a warrant for it to make them more onerous. When respondent denied approval because the lot sizes were not substantially in excess of 20,000 square feet it was attempting to amend the ordinance. This was an usurpation of the functions of the town council to which the legislature had granted the sole and exclusive right to regulate the size of lots. To disapprove the subdivision plan on the fifth ground was beyond the board's jurisdiction. *Matteson* v. *Zoning Board of Review*, 79 R. I. 121.

For the reasons indicated it is our opinion that the decision of the respondent board is illegal.

Subsequent to the issue of the writ the petitioners filed with us certain affidavits. In arriving at our decision we have not considered those affidavits and we do not therefore reach the question of whether they are properly before us under Rule No. 14 of the rules of this court.

The petition for certiorari is granted, the decision of the respondent board is quashed, and the records certified are ordered returned to the respondent board with direction to approve the proposed subdivision.

*James O. Watts,* for petitioners.

*James J. Longolucco,* Town Solicitor for Town of Westerly.

*Harold B. Soloveitzik, James D. Thornton,* for respondent.