Wilbur T. HOLMES

v.

Charles J. DOWLING, Jr., et al.

No. 78–143–M.P.

Supreme Court of Rhode Island.

April 14, 1980.

Edwards & Angell, Jerry L. McIntyre, William P. Robinson III, Providence, for petitioner.

Corcoran, Peckham & Hayes, Kathleen Managhan, James F. Hyman, Newport, for respondents.

OPINION

WEISBERGER, Justice.

This case is before us on a petition for certiorari to review a judgment of the Superior Court which affirmed a decision of the Zoning Board of Review of the Town of Jamestown (zoning board). The rulings below have denied permission to the petitioner to build a single-family residence on a parcel of residential property owned by him and located on East Shore Road in Jamestown.

The petitioner and his wife were the owners of a rectangular piece of property (Old Lot 60) in an "R40" residential zoning district in Jamestown. Under the Jamestown zoning ordinance, lots in an R40 district are required to have a minimum lot width of 150 feet and an area of at least 40,000 square feet. Old Lot 60 fronted on East Shore Road for 200 feet and ran back over 850 feet to the water. During 1974, petitioner obtained a permit to build a house on Old Lot 60, and the house was built on the rear portion of the lot.

In January 1975, petitioner applied to the Jamestown Planning Board for permission to divide Old Lot 60. The petitioner's plan called for carving out a rectangular piece of land at the front corner formed by the street line and the right side line. The frontage of the carved-out rectangle (Lot 100) on East Shore Road would be 150 feet, and the side lines would measure 300 feet. To create Lot 100 from Old Lot 60 would reduce the frontage of the remaining parcel (New Lot 60) to fifty feet. New Lot 60 would consist of a fifty-foot-wide strip or "panhandle" stretching from the street to a point 300 feet back. At that point the lot would abruptly become 200 feet wide and retain that width for more than 550 feet of remaining depth.

The planning board refused to act upon petitioner's plan on the basis that the plan, since it did not propose to divide Old Lot 60 in such a manner as to require provision for a street was not a "subdivision" under G.L. 1956 (1970 Reenactment) § 45–23–1 as the statute read at the time.[1] For this reason the planning board determined it had no jurisdiction over the matter.

On March 3, 1975, petitioner and his wife deeded Lot 100 to petitioner alone. The petitioner then applied to the town building inspector for a construction permit to build a house on Lot 100. The inspector denied the permit on the ground that New Lot 60 failed to meet the requirements of art. IV, § 5 of the town zoning ordinance, entitled "Substandard Lots of Record." That section provides that no lot area shall be so reduced that lot width will be less than that prescribed for the zoning district—here, 150 feet. The petitioner's reapplications in July and August 1975 were denied by the inspector for the same reason and for the reason that art. IV, § 1 of the ordinance prohibits more than one main structure on a residentially zoned lot. The inspector's evident rationale was that since petitioner's conveyance of part of Old Lot 60 violated art. IV, § 5, the conveyance would be ignored and

the parcels would be considered as one lot for purposes of art. IV, § 1. The proposed new building, as the second structure to be built on Old Lot 60, would thereby violate the ordinance.

The petitioner thereupon appealed to the zoning board, which upheld the determination of the building inspector. The grounds for this affirmance, as explained in a letter sent to petitioner's attorney by the chairman of the board, were that granting a permit would violate art. IV, §§ 1 and 5 of the town zoning ordinance and § III of the town subdivision ordinance. Section III of the latter ordinance provides minimum standards for subdivisions platted subsequently to the ordinance's adoption. Among the requirements set out in § III are requirements governing the ratio of lot depth to lot width (two and a half to one and preferably two to one), frontage ("All lots shall meet the required minimum frontage on a public street"), and side lines ("Wherever possible, side lot lines shall be substantially at right angles or radial to street lines"). The zoning board found that to permit petitioner's application would violate these three subdivision requirements, as well as the zoning ordinance.

The petitioner sought further review in the Superior Court pursuant to G.L.1956 (1970 Reenactment) § 45–24–20. In a decision rendered on August 16, 1977, the Superior Court affirmed the zoning board's decision. The creation of Lot 100 from Old Lot 60 was "a nullity," the court ruled, since such an action would leave the remainder of Old Lot 60 as a substandard lot in violation of the ordinance. The court considered the "width" requirement to refer to width along the street line; New Lot 60 was thus substandard because its street-line width, or frontage, was only fifty feet. The court alternatively ruled that a 1976 amendment to the zoning ordinance explicitly defining "lot width" to mean frontage nullified any

1. General Laws 1956 (1970 Reenactment) § 45–23–1 has since been amended by P.L.1979, ch. 223, § 1.

rights petitioner claims to have had under the pre-1976 ordinance.[2]

The petitioner here contends that New Lot 60 conforms with the ordinance and therefore that there were no grounds to deny him permission to build on the lot. He argues that we should construe the "lot width" requirement in the ordinance to mean "average width" or "mean width." Under such an interpretation, he maintains, New Lot 60 would possess the required 150-foot width, for although the lot is only 50 feet wide for 300 feet of its depth, it is 200 feet wide for the remaining approximately 565 feet.[3] The town, on the other hand, asserts that "lot width" refers to frontage. This conclusion, the town says, should be reached in view of the fact that the ordinance does not otherwise establish a minimum frontage, yet another provision of the zoning ordinance allows a reduction in the street "frontage regulations" in residential districts to sixty feet for lots that front on culs-de-sac. The width requirement, the town maintains, is the "frontage regulations" referred to in the second provision.

In an effort to support his interpretation, petitioner refers us to several cases from other jurisdictions in which reference is made to zoning ordinances that prescribe a "mean width" or "average width." These cases are not apposite in the interpretation of the subject ordinance since the fact that some other towns may require an average width in certain zoning districts does not suggest that Jamestown intended to adopt this type of width requirement here. The cases cited by petitioner show only that a town which wants its width restriction to refer to average width has the means to do so in clear and unambiguous terms. Jamestown, on the other hand, has included nothing in its ordinance remotely to suggest that an averaging process should be used to determine lot width.

To rebut the contention that "lot width" means frontage, petitioner cites *Snyder v. Zoning Board of Westerly*, 98 R.I. 139, 200 A.2d 222 (1964). In that case we reviewed a Westerly zoning-board decision which had disapproved a development plan on the ground, inter alia, that four of the proposed lots did not meet a minimum-width requirement of 100 feet. The four lots in question each fronted for less than 100 feet on a cul-de-sac. We held that the zoning board should not have considered "width" and "frontage" as synonymous when it applied the Westerly ordinance to the lots in question; frontage is measured along that portion of the lot that abuts the street, while width is measured from side to side at right angles to length. *Id.* at 142, 200 A.2d at 224.

The significance of this holding is best understood when the shape of the lots in issue in *Snyder* is perceived. Each of the four disputed lots in *Snyder* was in the approximate shape of a rectangle, about 120 feet by 175 feet. The cul-de-sac upon which each lot fronted, however, instead of running across one full side, formed a short fifth side where its arc intercepted a small corner area of each rectangle. In other words, each disputed lot in *Snyder* was a rough rectangle with a corner cut off by a short line of frontage on the turnaround circle. We held that the "width" of each lot should be measured from one side of each rectangle to the other, at right angles to length, and not across the short frontage line.

*Snyder* thus presented the odd situation in which the lots ran in depth from the frontage line not perpendicularly back, but back at an oblique angle.[4] In such an in-

2. Because we resolve this case against the petitioner under the pre-1976 ordinance, we need not consider the retroactivity of the amendment, under which New Lot 60 is obviously substandard.

Further references in this opinion to the town ordinance are to the pre-1976 version.

3. We shall assume that the petitioner's mathematical calculations are correct and that New

Lot 60 has a mean width of at least 150 feet, although we note that the measurements and diagram the petitioner furnished to the zoning board suggest that a contrary conclusion might be reached as well.

4. Subdividing around a cul-de-sac requires the irregular shaping and positioning of lots if available land surrounding the cul-de-sac is to be put to its most advantageous use.

stance, frontage length may be irrelevant to the determination of width and depth. The lots at issue in the present case, however, are positioned in a conventional manner. Here New Lot 60's frontage line runs at right angles to length, as do any number of imaginary lines running from side line to side line, parallel to the frontage line, back to a distance 300 feet from the street. Each of these lines is shorter than the length prescribed by the ordinance for minimum lot width.

In this case we shall apply the principle enunciated in *Snyder* and measure width from side to side at right angles to length. Utilizing this measurement, we reject petitioner's "mean-width" contention, which would have us *average* the length of parallel lines drawn from side line to side line throughout the depth of the lot. Such a technique would bring into conformity with the ordinance not only "pot-handle" and "flag" shaped lots, whose narrow strips of land adjoin wider areas, but also every manner of bizarrely shaped lot from hourglass to pentacle. We cannot accept the suggestion that the Jamestown ordinance permits a result not only inimical to the orderly and efficient use of land but also at odds with the indications of common sense. In construing statutory material, patently absurd results are to be eschewed. *Wilkinson v. Harrington*, 104 R.I. 224, 239, 243 A.2d 745, 753 (1968); *Town of Scituate v. O'Rourke*, 103 R.I. 499, 512–13, 239 A.2d 176, 184 (1968). In our view, an interpretation consonant with the purpose of the Jamestown ordinance is that a lot must measure at least 150 feet in width throughout its depth. New Lot 60 fails this test, and consequently petitioner had no right to have his permit to build thereupon approved.

The petitioner contends that the zoning-board decision denying him permission to build is invalid because the board failed to keep a record of its proceedings adequate to articulate the basis of the denial. We have indeed ruled on many occasions that zoning boards of review must record their proceedings in sufficient detail to allow a reviewing court to ascertain the grounds of decision. *E. g., Travers v. Zoning Board of Review of Bristol*, 101 R.I. 510, 514, 225 A.2d 222, 224 (1967); *Robinson v. Town Council of Narragansett*, 60 R.I. 422, 437, 199 A. 308, 314 (1938). As the preceding discussion of the merits of this case discloses, however, we have had no difficulty in ascertaining and reviewing the reasons for the zoning board's denial of petitioner's request for a permit. The Superior Court does not appear to have experienced any difficulty either. The dimensions of the lots in question were not disputed, and the determinations appealed to the Superior Court were the minimum lot requirements of the Jamestown ordinance. In its letter to petitioner's attorney, which is part of the record, the board set forth with reasonable clarity those sections of the ordinance under which the board found New Lot 60 deficient. Given the shape of this lot, a recitation of the lot width and one-structure-per-lot sections constitutes a sufficiently definite indication of the basis for denial "to enable [a reviewing] court to intelligently determine * * * that error of law either does or does not inhere in that decision," *Noyes v. Zoning Board of Review of Providence*, 94 R.I. 15, 22, 177 A.2d 529, 532 (1962).

In any event, since we have concluded that the failure of New Lot 60 to conform to the town zoning law negates all rights of petitioner to build on Lot 100, petitioner's procedural attack on the board's action is unavailing. The petitioner's attempt to raise an issue of procedural irregularity in the functioning of the zoning board cannot assist him when he has no substantive claim to favorable board action.[5] To credit petitioner's procedural argument sufficiently to order new proceedings before the board would be futile in view of the legal princi-

5. We emphasize that the petitioner never requested an exception from the zoning ordinance or otherwise invoked the factfinding or discretionary capacities of the board but has contended instead that he has a right to a building permit under the plain terms of the ordinance. As we have shown above, this claim is without merit.

ples that would there control the interpretation of the old zoning ordinance, not to mention the amended version.

 The petitioner's remaining argument is that because the town planning board had explicitly found the attempted division of Old Lot 60 not to be a "subdivision" under § 45–23–1, the plan's noncompliance with the town subdivision ordinance could not be a basis for the subsequent disapproval of the plan by the zoning board. Assuming arguendo the correctness of this contention, since the zoning board also based its ruling upon the ground that New Lot 60 did not conform to the lot-width requirement of the town zoning ordinance, the petitioner gains nothing by attacking an alternate basis for the denial. Since the petitioner's plan was unlawful when measured against the zoning ordinance, the presence or absence of an alternative basis for denial would not affect the correctness of the result. Thus the Superior Court committed no error in affirming the decision of the zoning board.

For the reasons stated, the petition for a writ of certiorari is denied and dismissed, the writ heretofore issued is quashed, and the papers in the case are ordered returned to the Superior Court with our decision endorsed thereon.

DORIS, J., did not participate.