DECISION
Before the Court is the appeal of petitioner, Marianne R. O'Neill (the petitioner), from a decision of the Zoning Board of Review for the Town of Narragansett (the Board). As record owner of lot 25A on Narragansett Platt F, petitioner seeks a reversal of the Board's September 22, 1994 decision upholding Town Building Inspector Ron Travers' issuance of a building permit for the abutting lot 25 on Plat F, which is owned by defendant Anthony Garcia (Garcia). The building permit authorized Garcia to construct a twenty-four foot by twenty-four foot two-car garage, which would be eighteen feet high, on lot 25, which is located at 366 Ocean Drive, Narragansett. Jurisdiction lies pursuant to G.L. § 45-24-69.
Facts
Prior to 1967, lots 25 and 25A were a single lot, which contained a main house and a carriage house. In 1967 this lot was carved into two lots, petitioner's rectangular lot, which contained the carriage house, and defendant Garcia's lot, which contained the main house. The Garcia lot is what is commonly referred to as a "panhandle" lot due to its shape. Holmes v.Dowling, 413 A.2d 95 (R.I. 1980). Based on the location of the main house and the carriage house, defendant Garcia's lot was cut so that it contained a twenty-five-foot-wide "driveway" or panhandle stretching from Ocean Road to a point two hundred and eighteen feet toward the water. At that point the lot abruptly becomes two hundred feet wide and remains that width for the depth of approximately four hundred feet.
On January 29, 1994, defendant Garcia became interested in purchasing the property. As a result, he undertook discussions with an architect and a contractor to determine whether a two-car garage could be built on the property and, if so, where the garage should be located. On May 9, 1994, architect Nancy Leslie submitted a site plan to defendant Garcia with a proposed twenty-four foot by twenty-four foot garage. This plan was later approved by Building Inspector Travers. According to these plans, the garage was to be located in the southwest corner of defendant's lot with a setback of eight feet from the border between lots 25 and 25A.
The record reveals this eight-foot setback had been discussed by Leslie and Travers and they determined that it complied with the appropriate zoning regulations. As a result, Garcia purchased lot 25 and approved final constructions plans for the garage. Garcia then submitted an application to the building inspector, and a permit was issued on May 31, 1994. Upon issuance of this permit, Garcia began construction on the garage. More specifically, Garcia had the site surveyed to ensure actual compliance with the planned eight-foot setback. Garcia also hired Dyer Excavation who undertook digging the garage's foundation and hired Stedman Giampanelli to reroute a drainpipe located in the proposed foundation. Additionally, Garcia retained South County Concrete to lay the forms for the foundation and to pour the necessary concrete.
On June 20 Garcia received a stop-work order due to petitioner's filing of an appeal with the Narragansett Zoning Board of Review of the building inspector's issuance of the building permit. Ten days after the filing of the appeal, on June 30, 1994, the Town of Narragansett enacted a new set of zoning ordinances designed to bring the Town's ordinances into compliance with the State's 1991 amendment to its zoning provisions.
The Narragansett Zoning Board of Review held a hearing on the O'Neill appeal on August 6, 1994. At that time the Board made an initial determination as to whether it should apply the old Narragansett Zoning Ordinances that were in effect when the building permit was issued or the new ordinances that went into effect after petitioner filed her appeal with the Board. The Board determined that it should apply the old ordinances that were in effect at the time that the permit was initially issued. The Board then determined that the permit had been properly issued. As a result, petitioner's appeal was denied in a decision dated September 22, 1994. The instant appeal to this Court from that decision was filed on September 28, 1994.
On July 7, 1995, Justice Famiglietti rendered a decision in this matter remanding the case to the Board for further findings of fact. More specifically, the Court held that the Board's use of the old zoning ordinances was inappropriate given the absence of findings of fact as to whether or not Garcia had reasonably and in good faith relied upon the issuance of the building permit so as to have incurred substantial costs or obligations. Decision dated 7-7-95, citing Shalvey v. Zoning Board of Review,99 R.I. 693 210 A.2d 589 (1965) and Tantimonico v. Board of Review,100 R.I. 615 218 A.2d 480 (1966); see also Almeida v. Zoning Board ofReview, 606 A.2d 1318 (R.I. 1992). On remand the Board found that Garcia had reasonably and in good faith relied on the permit to his financial detriment and that actual construction under the permit had commenced prior to the Town's stop-work order. In its decision dated February 29, 1996, the Board held that it would be unfair for the Town to apply the terms of the newly adopted zoning ordinance to Garcia because Garcia had relied upon the terms of the former zoning ordinance as well as the interpretation of that ordinance by the Building Inspector, as Garcia had begun construction on the garage pursuant to the permit and had expended financial resources in so doing.[1] The matter is now back before this Court for a substantive determination as to whether or not the Board made errors of law in the manner in which it applied the old zoning ordinance to Garcia's application.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the Superior Court may not substitute its judgment for that of the zoning board if it conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi,120 R.I. 301, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a mere scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)(citing Apostolou, 120 R.I. at 507, 388 A.2d 824-825). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Ass'n. Inc. v.George, 648 A.2d 370, 371 (R.I. 1994)(citing Town of Narragansettv. International Association of Fire Fighters, AFL-CIO, Local1589, 119 R.I. 506, 380 A.2d 521 (1977). Additionally, it is not within this Court's authority to uphold a zoning board's decision which is infected by error of law. Harmel Corp. v. Zoning Boardof Review, 603 A.2d 303 (R.I. 1992).
The petitioner asserts that the Board made three primary legal errors when it applied the old law. First petitioner asserts that the Board erroneously applied the side-yard setback distance when judging whether the Garcia garage was far enough away from the common lot line petitioner shares with Garcia. Secondly, petitioner asserts that the Board erroneously concluded that the Garcia lot was a substandard lot, and lastly, petitioner asserts that the Board erroneously applied the supplementary zoning regulations in determining the required distance of the Garcia garage from the common property line.
The defendants deny that the Board misapplied the law and assert that petitioner's allegations of error are premised upon the use of a definition which was contained in the 1991 statewide zoning amendment and which was not binding on the Town of Narragansett until the passage of the new zoning ordinance that is not applicable in this case. In addition, defendants assert that the Garcia lot is a substandard lot with a side-line boundary running between it and the petitioner's lot.
In order to begin the legal analysis required to determine whether the Board's decision was tainted by any errors of law, this Court must determine whether lot 25 is substandard and then determine the type of structure Garcia wishes to build on his lot. Lastly, this Court must examine the ordinances in effect at the time the building permit was issued to determine whether the common boundary in dispute is a side-yard line or a front-yard line. From this analysis it will then be apparent whether the Board applied the proper setback regulations in this matter.
According to the Narragansett Zoning Ordinances in effect when the permit was issued, a substandard lot of record is any lot "which does not satisfy one or more of the minimum dimensional requirements prescribed in the table of dimensional regulations in section 5.2 of [the] ordinance but which was shown . . . on an approved plat recorded after August 1965, or has been otherwise legally created, and which has not been altered so as to become more nonconforming since its creation." (Town of Narragansett Zoning Ordinance § 6.1) The property, as split in 1967, is located in an R-80 zone. As such, section 5.2 requires that the lot must have a width of two hundred feet, a front yard of fifty feet, a rear yard of sixty feet, and a side yard of forty feet. The code defines "lot width or frontage" as the distance between side lot lines (the lines separating the lot from the lots immediately adjacent on both sides facing on the same street) and measured along the front lot line abutting a town street (the boundary of the lot along the principal street). Given this definition the width of the Garcia lot is a mere twenty-five feet. Thus the lot is substandard as it does not meet all the requirements set out in § 5.2. As a result, the Board did not commit an error of law when it classified the Garcia lot as a substandard lot.
Garcia seeks to construct a garage on this substandard lot with dimensions of twenty-four feet by twenty-four feet and a height of eighteen feet. According to the applicable zoning ordinance, such a garage is, by definition, an accessory structure. (Narragansett Zoning Ordinance §§ 6.1 and 6.4) Due to the size of the proposed garage, the placement of the structure must comply with the required front, rear, and side-yard dimensions specified in the ordinance's dimensional regulations. (Narragansett Zoning Ordinance §§ 6.1 and 6.4) The exact size of these dimensional setbacks is in turn determined by the frontage of lot 25. Again, as above, the definition of "frontage" is the same as "lot width," i.e., "the distance between side lot lines, measured along the front lot line abutting a town street." Id. § 17.2. Thus the frontage is twenty-five feet. The garage, then, must have a front yard of twenty-five feet, side yard of eight feet, and a rear yard of twenty feet with building coverage being no greater than twenty-five percent of the lot's area.
The question then becomes which one of these setbacks (front, side or rear) applies to the garage and its distance from the common boundary between petitioner and Garcia's property which parallels Ocean Road. While the Board held that the eight-feet-side-yard frontage requirement applied, petitioner alleges that the boundary is in fact a front yard requiring twenty-five feet of frontage. Side yard is defined as "a yard between the side lot line and the nearest line of the building," and front yard is defined as extending across the full width of the lot lying between the front lot line and the nearest line of the main building. (Narragansett Zoning Ordinance § 17.2) Since the lot line in dispute was not a frontage or lot-width line because it did not abut a Town street, the side-yard frontage requirement is applicable, rather than the frontage requirement. The Board and the Building Inspector used this eight-foot dimension for side yards. In so doing they committed no error of law.
Conclusion
The decision of the Narragansett Zoning Board of review is upheld in that it was not premised upon errors of law and is supported by the evidence of record. Petitioner's appeal is denied. Counsel shall prepare an appropriate judgment for entry.
[1] Neither petitioner, nor her counsel, argue that these findings were erroneous or that the old ordinances should not apply. Thus this Court will apply the "old" ordinance as it existed at the time the Garcia permits were issued. As a result, all citations to the Narragansett Code and Zoning Ordinances are references to the Code as it existed in 1994.