[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on the appeal of Howard M. Dulude ("Appellant") from a decision of the Town of Coventry Zoning Board of Review ("Board"). The Board's decision denied the Appellant's request for two dimensional variances necessary to construct a proposed single-family dwelling on a vacant lot. Jurisdiction is pursuant to G.L. (1956) §45-24-69.
 Facts and Travel
The Appellant owns real property located on Marion Drive in the Town of Coventry, Rhode Island, otherwise identified as Assessor's Plat 42, Lot 9 ("Property"). The 250 x 130 foot Property, located on the waterfront of Johnson's Pond, is zoned R-20 and measures a total of 26,750 square feet. The Appellant wants to construct a modest 24 x 42 foot single-family dwelling on the lot.
Construction of the proposed single-family dwelling requires zoning relief in the form of dimensional variances from two setback requirements established in the Zoning Ordinance of the Town of Coventry ("Ordinance"). First, Ordinance § 925(B) states that "[n]o structure may be erected within fifty (50) feet of any fresh water wetland, stream, river, pond or lake except sheds, for the storage of boats and accessories, piers and similar structures." However, the Appellant's proposal situates the dwelling twenty (20) feet from Johnson's Pond. Consequently, the Appellant is seeking a thirty (30) foot dimensional variance from § 925(B).
Second, the Ordinance requires that structures built in an R-20 zone maintain a front setback of thirty-five (35) feet from the street. See
Ordinance Table 6-7 R20 Dimensional Regulations. As designed, the Appellant's proposal would result in a twenty-nine (29) foot front setback from Marion Drive. Accordingly, the Appellant is seeking a six (6) foot dimensional variance from this minimum requirement.
Before the Appellant purchased the Property in 2003, the previous owner, Domestic Bank, sought to construct a single-family dwelling with three bedrooms on the subject lot. Because wetlands comprise a substantial portion of the Property, G.L. (1956) § 2-1-21(a)(1) required Domestic Bank to obtain Department of Environmental Management ("DEM") approval of any construction that would impact those wetlands.
In 1996, Domestic Bank applied to DEM to obtain a permit to alter freshwater wetlands. As submitted, the 1996 proposal would have affected 6,690 square feet of freshwater wetlands, including 2,500 square feet of forested wetland. DEM found that the proposal would not only cause a significant amount of habitat loss but also negatively impact daylighting by removing the forest canopy. Further, DEM concluded that "[w]hile attempts appear to have been made to minimize impacts to freshwater wetlands, it is evident that further project alternatives and reductions in scope could have substantially reduced impacts." DEM Notice of Denialfor Application 96-0415, at ¶ 4 (May 29, 1998). Based on these conclusions, DEM denied the 1996 application.
After modifying its original proposal, Domestic Bank resubmitted an application to DEM for a permit to alter freshwater wetlands in 1999 (99-0386). It also submitted its modified proposal to the Coventry Conservation Commission. Questioning the overall suitability of the Property for development, the Commission considered the 1999 proposal "perhaps more detrimental than the [1996] proposal." Coventry ConservationCommission Review of Application No. 99-2001 at p. 1 (January 14, 2001). First, with respect to the Individual Sewage Disposal System ("ISDS"), the Commission found that the extreme wetness of the Property, its proximity to Johnson's Pond, and the fluctuation in the pond's levels could cause excess groundwater to saturate the leach field. As such, the Commission feared that the saturated leach field would cause nutrients and pathogens to contaminate the pond. Next, the Commission maintained that the proposal did not demonstrate sufficient efforts to minimize wetland impact. Finally, the Commission noted potential problems with stormwater runoff, flooding, and the negative impact on wildlife. The Commission opined that the Appellant could mitigate these problems by the presentation of alternative designs and layouts which reduced the number of bedrooms and relocated the structure to the more westerly portion of the Property. However, based on the submitted proposal, the Commission recommended that DEM deny the permit application.
After five years of negotiations, DEM issued Domestic Bank a permit to alter freshwater wetlands on February 28, 2001. Concluding that the proposal did not represent a random, unnecessary, or undesirable alteration of freshwater wetlands, DEM issued the permit subject to numerous conditions including directions to: (1) plant additional shrubbery; (2) disperse a minimum of two gallon planting stock evenly throughout the area marked on the site plan; (3) allow the area to re-vegetate free from any cutting or mowing; and (4) grade the floodplain compensation area with at least six inches of plantable loam. See Permitto Alter Freshwater Wetlands, at ¶ 7 (February 28, 2001).
Following his acquisition of the Property from Domestic Bank in 2003, the Appellant applied to DEM for a renewal of the permit to alter freshwater wetlands on the Property on January 6, 2004. With the application for renewal, the Appellant submitted a modified site plan which attempted to address the concerns raised by the Coventry Conservation Commission. First, the revised site plan reduced the number of bedrooms from three to two. Second, the revision incorporated a more technologically advanced ISDS system which utilizes ultra violet treatment to reduce the impact on the environment.[1] DEM granted the Appellant's request for renewal and approved the revised site plan subject to a biannual DEM inspection the proposed ISDS.
After securing the requisite permits from DEM, the Appellant applied to the Board for the necessary dimensional relief to accommodate the proposed construction. See Ordinance § 470 and G.L. (1956) § 45-24-41(a). The Board forwarded the application to the Coventry Department of Planning and Development ("Planning Commission") for its review. After conducting a site visit of the Property, the Planning Commission recommended that the Board deny the application for dimensional relief.[2]
In compliance with Ordinance § 453 and G.L. (1956) § 45-24-41(b), the Board conducted a public hearing on the Appellant's application on June 2, 2004. Neither an audio-recording nor a comprehensive transcript of that hearing is available. Consequently, the Court is forced to rely on the minutes as an unofficial transcript. From these minutes, the Court will attempt to relate a tentative overview of the public hearing before the Board.
After an introduction by his attorney, the Appellant offered the expert testimony of the project's civil engineer, Richard Cohen.[3] Cohen testified that the Property had wetlands and septic system permits from DEM. More importantly, Cohen averred that the numerous wetland areas on the Property constrained the possible locations of the proposed structure. Consequently, Cohen stated that the Appellant submitted alternative design proposals to allow DEM to select the plan that minimized any negative impact on the environment.
Next, prompted by questions from various Board members, the Appellant responded that he planned to retire in approximately ten years, and he intended to use the Property as a retirement home for him and his wife. Until such time, he testified that he would not rent the Property but might allow his in-laws to stay at the house. Although the Appellant testified that he has four children, he affirmed that they would not live with him and his wife during their retirement.
Then, the Appellant provided the testimony of real estate expert, Marcia Feeley. The minutes reduced her testimony to five bullet points which preserve little substantive testimony. From these bullet points, it appears that Feeley stated the application is consistent with other homes in the area, and that a single-family residence is the only use for this property.
Finally, the Board heard testimony from two abutting property owners who objected to the proposal. First, Dianne Cyr testified that high pond levels caused many homes in the area to flood. Consequently, she expressed concern about surface water run off into the pond as a result of flooding. Second, William Roach expressed concern about the efficacy of the proposed ISDS. Roach also suggested that the Appellant gained beneficial use of the Property by docking his boat and gaining access to the water. At the conclusion of the meeting, the Board reserved judgment to consider the testimony presented.
At a subsequent meeting held on July 7, 2004, the Board expressed its concern about the house size and the potential that the Property would be leased. As a result, the Board voted 4-1 to deny the application. On August 5, 2004, the Board issued a written decision denying the Appellant's request for a dimensional variance to construct the proposed single-family dwelling on the Property.
Pursuant to Ordinance § 490 and G.L. (1956) § 45-24-69, the Appellant timely filed the instant appeal in Kent County Superior Court on August 19, 2004. After receiving the briefs submitted by both parties, the Court is now prepared to render its decision.
 STANDARD OF REVIEW
Section 45-24-69 confers jurisdiction on the Superior Court to review the decision of a zoning board. Section 45-24-69(d) provides in relevant part:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"[T]he Superior Court reviews the decisions of a plan commission or board of review under the "traditional judicial review" standard applicable to administrative agency actions." Restivo v. Lynch, 707 A.2d 663, 665
(R.I. 1998). The Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level." Id.
at 665-66 (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)).
"The trial justice may not substitute [his or her] judgment for that of the zoning board if [he or she] can conscientiously find that the board's decision was supported by substantial evidence in the whole record." MillRealty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolouv. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 824-25 (1978)). "Substantial evidence means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Lischio v. ZoningBoard of Review of the Town of North Kingstown, 818 A.2d 685, 690, n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981)).
In order to obtain a dimensional variance, Ordinance § 454 sets forth the four-prong standard which an applicant must satisfy to obtain relief:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to the physical or economic disability of the applicant;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Coventry Comprehensive Plan; and
 (4) That the relief to be granted is the least relief necessary.[4]
On appeal, the Appellant contends that the Board's decision was arbitrary and capricious, characterized by abuse of discretion, affected by error of law, and not supported by competent evidence. Further, the Appellant argues that the denial of the requested variance resulted in an adverse impact that constituted more than a mere inconvenience, because he is left without any reasonable legal use of his land. The Board responds that it properly denied the Appellant's application, because he failed to meet his burden of proof to introduce legally competent testimony and evidence in support of his application for dimensional relief.
After review of the arguments raised by both parties and the entire record of the proceedings before the Board, the Court is appalled at the progression of this case and finds that procedural flaws and errors of law have plagued the Board's review of the Appellant's application from start to finish. The Court will address these errors seriatim.
 Timeliness
Although the Appellant has not raised this issue on appeal, the Court will begin with the initial timeline of events that occurred after the Appellant submitted his application for zoning relief. With respect to the appropriate timeline to which a zoning board should adhere in reviewing a variance application, § 45-24-41(b) states in relevant part:
 "A zoning ordinance provides that the zoning board of review, immediately upon receipt of an application for a variance in the application of the literal terms of the zoning ordinance, may request that the planning board or commission and/or staff report its findings and recommendations, including a statement on the general consistency of the application with the goals and purposes of the comprehensive plan of the city or town, in writing, to the zoning board of review within thirty (30) days of receipt of the application from that board. The zoning board shall hold a public hearing on any application for variance in an expeditious manner . . ." (Emphasis added).
In the instant case, the Appellant submitted his application on February 18, 2004; however, the Board did not receive a recommendation from the Planning Commission until May 2, 2004. Despite the General Assembly's direction that the Board make an immediate request to the Planning Commission for a recommendation, and that said recommendation be returned within thirty days of that request, over seventy (70) days elapsed between the Appellant's submission and the Board's receipt of the recommendation. The Board finally rendered a decision on July 7, 2004.
The Rhode Island Supreme Court has classified this type of deadline as directory, rather than mandatory. See Washington Highway Development v.Bendick, 576 A.2d 115, 117 (R.I. 1990). Accordingly, technical compliance with the thirty-day deadline is not required. However, given that the Board allowed five months to lapse between the submission of the Appellant's application and a subsequent decision, the Court finds that the procedure was neither immediate nor expeditious.[5]
Although the lack of expediency would not be cause for reversing the Board's determination in and of itself, the Board's failure to conduct an expedient review of the Appellant's application is merely the first in a series of errors.
 Competent Transcript
The next glaring problem with the conduct of this case is the complete and utter lack of a reliable transcript. G.L. (1956) § 45-24-61(a) states in relevant part,
 "[f]or any proceeding in which the right of appeal lies to the superior or supreme court, the zoning board of review shall have the minutes taken either by a competent stenographer or recorded by a sound-recording device."
Although the Board claims it was accidental, the Board does not dispute the Appellant's representation that the Town Solicitor destroyed the audio recording of the public hearing. However, the Board argues that it was not required to maintain the audio recording of the public hearing, because it kept minutes of the meeting.
The Rhode Island Supreme Court has repeatedly emphasized the point that "zoning boards of review must record their proceedings in sufficient detail to allow a reviewing court to ascertain the grounds of decision."Holmes v. Dowling, 413 A.2d 95, 98 (R.I. 1980); seealso Travers v. Zoning Board of Review of Bristol,101 R.I. 510, 514, 225 A.2d 222, 224 (1967); Robinsonv. Town Council of Narragansett, 60 R.I. 422, 437,199 A. 308, 314 (1938). Given the dearth of information preserved, the Board is mistaken when it suggests that the minutes provided from the public hearing present a sufficiently detailed account of the proceedings.
In the instant case, the minutes are incomplete. First, the minutes reduce expert testimony to short bullet points that failed to preserve any substantive information. Without the substance of expert testimony, it is impossible for the Court to determine whether the Board's decision was supported by competent evidence. When an applicant secures the services of experts to testify at a public hearing, the Board should make every effort to preserve said testimony. Second, when transcribing the testimony of Richard Cohen, the minutes completely omit the fact that Cohen was the project's civil engineer. The Court should not be forced to conduct a review of the entire file to discern the relevance or position of a given witness. Such information should be clearly articulated in the transcript.
Although the minutes facially comply with the statutory mandate set forth in § 45-24-61(a), they fail to facilitate any meaningful review of the proceedings. The Court recommends that going forward, the Board either make a better effort to preserve the audio recording of a public hearing or employ the services of a competent stenographer to avoid duplication of the quality of the record presented to the Court in the instant appeal.
 Public Hearing
In zoning matters, properly noticed public hearings are designed to "afford those having an interest an opportunity to present facts which might shed light on the issue before the board." Carroll v. Zoning Bd. ofReview, 104 R.I. 676, 678, 248 A.2d 321, 323 (1968) (citing Perrier v. Board of Appeals, 86 R.I. 138, 144,134 A.2d 141, 144 (1957)).
As to what little could be gleaned from the minutes, it appeared that the Board lost complete perspective of the relevant issues — the request for a six-foot reduction in the front yard setback to Marion Drive and the thirty-foot reduction in the distance to Johnson's Pond. The transcript is peppered with irrelevant and immaterial questions which failed to shed any light on the relatively narrow issues presented. For example, the questions posed included the type of heating the house would use, the number of Appellant's children, and the Appellant's intended use of the Property between the completed construction and the time he retired. Regardless of how many children the Appellant has, the proposed single-family dwelling is a two-bedroom structure. If approved, the number of bedrooms would not change relative to the number of Appellant's children. The Board also expressed concern that the Appellant may choose to rent the Property until he retires. When questioned by the Board, the Appellant indicated that he did not intend to rent.
Although the Board may ask questions necessary to inform and familiarize itself with the Property and the proposal, it appears from the minutes of the July 7, 2004 that the Board relied on these irrelevant issues to support its denial. When the Board voted on the application, the Board members cited two reasons for denial, the size of the house and the potential that it will be used as rental property. However, rental property is a permitted use in an R-20 zone. Consequently, the Board has no authority to deny a request for a dimensional variance simply, because it does not favor rental properties. If the Board feels that rental properties are not appropriate in an R-20 zone, the proper way to remedy the problem is to amend the Ordinance, not arbitrarily deny applications. Therefore, the Court finds that the Board abused its discretion by relying on an impermissible basis for denying the Appellant's application.
 DEM Authority to Issue Permits
From the transcript, it appears that the Board did inquire as to the mechanics of the proposed dwelling and the efficacy of the ISDS. However, the Appellant had already obtained DEM approval of both the location of the house on the Property relative to the wetlands and the ISDS. Consequently, the Court is troubled by the Board's seeming complete disregard of the expert opinions and determinations implicit in DEM's approval of the proposed ISDS system and issuance of the permit to alter freshwater wetlands on the Property.
The General Assembly has vested the Director of the DEM with the authority to approve or deny applications for construction which encroach on wetland areas. Pursuant to G.L. (1956) § 2-1-21(a),
 "(1) No person, firm, industry, company, corporation, city, town, municipal or state agency, fire district, club, nonprofit agency, or other individual or group may excavate; drain; fill; place trash, garbage, sewage, highway runoff, drainage ditch effluents, earth, rock, borrow, gravel, sand, clay, peat, or other materials or effluents upon; divert water flows into or out of; dike; dam; divert; change; add to or take from or otherwise alter the character of any fresh water wetland as defined in § 2-1-20 without first obtaining the approval of the director of the Department of Environmental Management. (2) Approval will be denied if in the opinion of the director granting of approval would not be in the best public interest. Approval shall not be granted if the city council or town council of the municipality within whose borders the project lies disapproves within the forty-five (45) days provided for objections set forth in § 2-1-22."
The statute provides that a city or town council may raise an objection to a proposal within the appropriate objection period. After the time for objections passes, the zoning board lacks the authority to arbitrarily override and effectively revoke permits and/or approvals issued by the Director of the DEM.[6]
Given the arduous, in depth and often expensive vetting process involved, an applicant should be entitled to rely on permits and approvals obtained from DEM. Because it employs the services of highly qualified environmental engineers and biologists to evaluate proposals, DEM is uniquely positioned to approve or deny proposed ISDS systems and to assess the viability of applications for permits to alter fresh water wetlands.
Without connecting its environmental reservations regarding Appellant's proposal to the four-prong legal standard of hardship, the Court finds that the Board lacks the statutory authority to arbitrarily and capriciously predicate denial of a requested variance on its lay determinations regarding a DEM-approved ISDS or a DEM-permitted alteration of wetlands.
 Written Decision
After a review of the Board's written decision, the Court has identified two major infirmities. First, the Board failed to include any substantive findings of fact as to the evidence presented for and against the application. Second, the Board employed an outdated standard as to the requisite degree of demonstrable hardship to obtain dimensional relief. The Court will expound upon each infirmity in turn.
With respect to the findings of fact, Ordinance § 457 and G.L. (1956) § 45-24-61(a) require the Board to issue a written decision either affirming or denying a request for zoning relief. The decision must include "all findings of fact and conditions, the vote of each participating member, and the absence of a member or his or her failure to vote." § 45-24-61(a). "When the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper [under] the circumstances." von Bernuth v.Zoning Board of Review, 770 A.2d 396, 401 (R.I. 2001) (quoting IrishPartnership v. Rommel, 518 A.2d 356, 359 (R.I. 1986)).
The Rhode Island Supreme Court has "caution[ed] zoning boards and their attorneys to make certain that zoning-board [sic] decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." von Bernuth, 770 A.2d at 402. When the Board's decision is conclusional and fails to apply the proper legal principles, "judicial review of the board's work [is] impossible." Id. In von Bernuth, the Supreme Court reversed the affirmance of a zoning board decision approving a request for dimensional relief. The Supreme Court found that the failure of the Board to provide substantive findings to demonstrate compliance with not only the four-prong standard for zoning relief but also the requisite degree of demonstrable hardship constituted reversible error.
Findings of fact are intended to resolve disputed issues of fact and to memorialize the Board's decision as to the weight of evidence presented.Id. In the case at bar, the Board made only four so-called `findings' that do nothing to aid appellate review. The first finding merely identifies the Appellant as the owner of the Property. The second finding states the type of zoning applicable. The third finding reiterates that the Property is currently vacant. The fourth finding restates the dimensions of the proposed single-family dwelling. These `findings' do nothing but simply restate facts which the parties do not dispute and reiterate information that the Court could easily have discerned from reading the Appellant's application for zoning relief. The address of the Property, the identity of the owner, and the stated dimensions of the proposal provide no evidence which bears on the Appellant's success or failure in satisfying the fourprong standard for dimensional relief. In its appellate capacity, the Court lacks the authority to weigh the evidence or pass upon the credibility of witnesses. See Restivo,707 A.2d at 665. In the absence of meaningful findings of fact, this Court is incapable of deciding whether competent evidence exists to support the Board's decision.
The Board's written memorandum in support of the underlying denial also acknowledges the inadequacies of the written decision. Counsel for the Board posits that "[a]lthough the Board's decision appears to indicate that the Board determined the plaintiff not to have created his own alleged hardship, the evidence in the record clearly suggests otherwise."Brief in Support of Defendant-Respondent Town of Coventry Zoning Board ofReview, at p. 9 (February 5, 2005). In support of this position, counsel argues that the Appellant refused to pursue a more modest proposal, and instead, filed the instant suit.
The Court rejects both the attempt to refashion the Board's determination and the argument asserted in support of this attempt. First, the Board's decision does not merely appear to indicate, itdefinitively indicates, that the Appellant satisfied the second prong of the standard by demonstrating that the hardship was not self-created. Second, the assertion that the Appellant failed to submit alternative proposals is factually incorrect. The record indicates that when the Appellant applied to the DEM for permits to alter fresh water wetlands, he submitted alternative designs. From these designs, DEM selected the proposal which caused the least amount of disturbance to the surrounding wetlands. In addition to the evidence presented to DEM over the five-year period by the Appellant and his predecessor in title, the Appellant offered the testimony of not only the project's civil engineer but also the testimony of a real estate expert. Consequently, the Court finds the Board's argument wholly without merit.
In addition to the fact that the Board's written decision is utterly devoid of any meaningful analysis of the proposed application, the Board employed a definition of hardship — to wit, "that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." — that the Rhode Island Supreme Court abrogated two years ago in March 2003. See Lischio, 818 A.2d at 691-92.
A brief legislative and judicial history tracing the evolution of the applicable requisite degree of hardship may be helpful. From 1960 until 1991, the judicially created doctrine in Viti v. Zoning Board of Reviewof Providence, 92 R.I. 59, 166 A.2d 211 (1960), established the proposition that applicants for a dimensional variance need only show that the hardship that would result from the denial of a request for dimensional relief amounts to more than a mere inconvenience. As such, applicants "who wanted to establish a right to dimensional relief were not required to demonstrate a loss of all beneficial use of the parcel in the absence of [dimensional relief]." Lischio, 818 A.2d at 691 (citing Viti,92 R.I. at 64-65, 166 A.2d at 213).
In 1991, the General Assembly amended § 45-24-41(d)(2) to reflect a more stringent degree of demonstrable hardship. The 1991 amendment, which superseded the Viti Doctrine, read in pertinent part:
 "That the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." P.L. 1991 ch. 307, § 1 (emphasis added).
From 1991 until 2002, the Court adhered to and applied this heightened standard. See von Bernuth v. Zoning Board of Review, 770 A.2d 396 (R.I. 2001) (discussing effect of 1991 Amendment to § 45-24-41(d)(2) heightening requisite degree of hardship); Sciacca v. Caruso, 769 A.2d 578
(R.I. 2001) (same).
Nevertheless, in 2002, the General Assembly again amended §45-24-41(d)(2) by removing the language added in 1991 thereby reinstating the lesser standard represented by the Viti Doctrine:
 "that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." P.L. 2002, ch. 384, § 1.
Although the Town last amended its zoning Ordinance in November 2003, § 455(B) continues to reflect the version of § 45-24-41(d)(2) which was in place prior to the 2002 amendment.
Regardless of the language contained in the Ordinance, the amended version of § 45-24-41(d)(2) controls the standard of review. As articulated in Ordinance § 101, the Ordinance is set forth enacted "[i]n accordance with Title 45, Chapter 24 of the General Laws of Rhode Island, 1991 as amended and as hereafter amended." The Rhode Island Zoning Enabling Act, codified at §§ 45-24-27 through 45-24-72, is not intended to act as merely a suggested guideline to zoning boards. Rather, the Act controls and specifically delineates the jurisdiction of the zoning board. The Rhode Island Supreme Court has unequivocally stated that the authority of a zoning board is circumscribed by the terms of the zoning enabling act, and "the jurisdiction thereby conferred can neither be expanded nor diminished by the terms of an ordinance." Lincourt v.Zoning Board of Review of Warwick, 98 R.I. 305, 309, 201 A.2d 482, 485
(1964). Accordingly, because the instant case arose subsequent to the 2002 amendment, the Board should have applied the less stringent standard codified in § 45-24-41(d)(2) rather than the outdated definition in Ordinance § 455(B).
As the arbiter of zoning appeals, it is imperative that the zoning board be cognizant of the applicable legal standards lest needless hardship befall the applicant. In the instant case, the Appellant expended substantial sums of money and valuable time to obtain DEM approval of the proposed construction only to have the Board predicate denial of the proposal on an error of law. Therefore, the Court finds that the Board's use of the wrong standard prejudiced the substantial rights of the Appellant and must be addressed and remedied immediately.
 Conclusion
For the foregoing reasons, the Court finds that the timeliness of the proceedings, the lack of a competent transcript, and the inadequate written decision issued by the Board violate the mandates set forth in the relevant Ordinance and statutory provisions. Furthermore, due to the Board's dragging of its feet, the Appellant will now have to apply for yet another permit to alter fresh water wetlands, because the renewal obtained in January 2004 expired on February 28, 2005. As such, the Appellant will have to expend additional sums of money in his quest to build a retirement home. By failing to properly evaluate the decisions of the DEM and by impermissibly substituting its judgment on environmental issues without reasoned explanation for its adverse conclusions, the Court finds that the Board's denial was arbitrary and capricious and characterized by an abuse of discretion.
Based on the foregoing, the Court queries, with hesitation, whether the Board is intentionally and impermissibly trying to thwart the Appellant's attempts to develop the Property. Given the hardship the Appellant has incurred from the numerous procedural and substantive errors that have marred the review of his request for dimensional relief, the Court directs the Board to reconvene within thirty (30) days of this Court's order to formulate specific findings of fact based on the evidence previously presented it, and to issue, forthwith, an analytically substantive decision, either affirming its prior decision or reconsidering its prior opinion in light of the Court's comments.
For the reasons stated above, the Court reserves judgment on the merits of the instant appeal and remands the case back to the Coventry Zoning Board to comply with the aforementioned directions. Counsel shall submit an appropriate order.
[1] Although no documentation in the record has been provided, the Appellant represents that he has obtained DEM approval of the proposed ISDS system.
[2] From the record, it is impossible to discern the basis for the Planning's Commission recommendation. The Planning Commission recommendation was a single sheet of paper that stated the relief requested and recommended denial.
[3] It is unclear from the `minutes' of the meeting who Richard Cohen actually is. The Court had to search the memoranda to uncover that Cohen is the project's civil engineer.
[4] The standard set forth in § 454 of the Ordinance is substantially similar to G.L. (1956) § 45-24-41(c) which reads:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
(2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
(3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
(4) That the relief to be granted is the least relief necessary."
[5] Because the renewal of his permit to alter wetlands on the Property expired on February 28, 2005, the Appellant will now have to expend additional time and significant sums of money to secure another renewal.
[6] As to the objections raised by abutting property owners regarding the wetness of the Property and the efficacy of the proposed ISDS, the public hearing held by DEM regarding a permit request or an ISDS proposal is the proper forum to raise such objections.