DECISION
Before this Court is an appeal from the decision of the Bristol Zoning Board of Review (hereinafter "Board"), upholding the Bristol Zoning Enforcement Officer's determination that two lots owned by Heather K. Anderson (hereinafter "Petitioner") were not buildable lots. Petitioner is aggrieved by the decision of the Board and asks this Court to overrule the decision of the Board. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The Petitioner is the owner of the parcel of land on 53 Mulberry Street, Bristol, Rhode Island. Petitioner bought this property on May 28, 2004. The parcel is comprised of 5 individual lots — Lots 23, 24, 25, 26, and 102 — on Assessor's Plat 73. There is a detached garage and a single family house on lots 23 and 24. Lots 102, 25, and 26 are essentially undeveloped; the only improvements which have been made on those lots are *Page 2 
the presence of a flagpole, a row of hedges, a stonewall, and the continued maintenance of the lots by mowing and other yard upkeep.
The original property was subdivided in 1909 to form the 5 lots which comprise the subject parcel on Plat 73. These lots were recorded as part of the "Replat of the William Henry Church Farm." (Pl.'s Ex. F.) In 1920, the heirs of William Henry Church built the single-family residence which still remains on lots 23 and 24. (Pl.'s Ex. G.) Subsequently, there was a series of conveyances of the lots. In 1944, Angelo L. and Sylvia Pozzi purchased lots 23, 24, and 102. The Pozzis later purchased the adjacent lots, numbers 25 and 26, in 1950. Therefore, as of 1950, all five lots of Plat 73 were under common ownership with the Pozzis.
On July 8, 1963, the Pozzis sold the entire parcel of land to Victor G. and A. Beatrice Mathieu. The deed which memorialized this sale described the parcel by a metes and bounds perimeter description. The deed also referenced lots numbered 73, 74, 75, and 76 on the plat named "Replat of the William Henry Church Farm [. . .]." (Pl.'s Ex. C.) On October 11, 1988, Victor G. Mathieu recorded a Sewer Assessment Homesite Declaration for the payment of Bristol sewer taxes. The Homesite Declaration listed lots 24, 25, 25A, and 26 on Assessor's Plat 73. (Pl.'s Ex. A.) The Homesite Declaration described the subject parcel as one homesite for tax purposes. The Declaration also contained language which reads: "This declaration is made with full knowledge that, if the original homesite is subsequently divided, then assessment charges will be imposed in accordance with the intent of section 18-41 (b) of said ordinance." Id.
On November 19, 1999, Victor G. and Beatrice Mathieu deeded the property to Victor G. Mathieu, as Trustee for the Victor G. Mathieu Trust. (Objector's Ex. 6.) *Page 3 
Again, the lots were described by a single metes and bounds description, and they referenced the William Henry Church Farm with lots 73, 74, 75, and 76.
On May 28, 2004, Victor G. Mathieu, as Trustee for the Victor G. Mathieu Trust, sold the subject parcel to Petitioner. (Pl.'s Ex. E.). Following the purchase of the lots of 53 Mulberry Rd., Petitioner sought a building determination from the Bristol Zoning Enforcement Officer to declare lots 25 and 26 as buildable lots. Rhode Island General Laws (1956) § 45-24-54, "Administration — Administration and Enforcement of Zoning Ordinances," controls the Bristol Zoning Enforcement Officer's duties. Section 45-24-54 provides that "[. . .] In order to provide guidance or clarification, the zoning enforcement officer or agency shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request."
Since the subject parcel is located within Bristol's R-20 residential zone, the minimum lot size is 20,000 square feet for a buildable lot. Collectively, lots 25 and 26 total 9,000 square feet, less than half of the needed lot space to build. However, Bristol Town Code Section 28-221 (a) (1), "Single Lots of Record," provides that "[i]n any district in which single-family dwellings are permitted, a single-family dwelling and customary accessory buildings may be erected on any single lot which was of record on June 28, 1961." Since the 5 lots of the subject parcel all predate the zoning ordinance, the Petitioner applied for a building determination under 28-221 (a) (1) for lots 25 and 26 because they have remained undeveloped since the division of the William Henry Church Farm. *Page 4 
Bristol's Zoning Enforcement Officer denied Petitioner's request to declare lots 25 and 26 a buildable lot. The Zoning Officer found that lots 25 and 26 had merged with lots 23, 24, and 102 "by use" and were not separate buildable lots. (Pl.'s Ex. D.) Accordingly, he denied Petitioner's request.
Petitioner then sought review of the Zoning Enforcement Officer's determination by the Board. Upon a review of Petitioner's appeal, the Board specifically found that "the lots have not merged by use." (Decision of the Bristol Zoning Board of Review, dated May 16, 2006.) However, the Board upheld the decision of the Zoning Enforcement Officer by finding that
 there has been a merger of Lots 23, 24, 25, 26, and 102 by declaration of the persons who have conveyed the parcels in the past. Since the time that the parcels were first conveyed together from Pozzi to Mathieu in 1963, they have been described as one parcel of land, and not as separate lots. From that, the Board finds that it is reasonable to conclude that Pozzi, in conveying the property, and Mathieu in accepting the property, understood the parcel to be one lot of land and that it would remain one lot of land. When Mathieu conveyed the property to a trust as one parcel in 1999, and the trust in turn conveyed the land to petitioner in 2004, they confirmed that it was one lot. The fact that in 1988 Mathieu also recorded a Sewer Assessment Homesite Declaration with the town of Bristol describing the lots as one parcel provides further evidence to support the concept of this land as one lot. Id.
Petitioner has filed a timely appeal of the Board's decision. Petitioner claims that the Board's decision was in excess of its statutory authority and in violation of the ordinance provisions. Petitioner maintains that her rights have been substantially prejudiced by the Board's decision and that the Board erred as a matter of law.
 Standard of Review
The Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides: *Page 5 
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi, 120 R.I. 501,507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-825). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Ass'n,Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town ofNarragansett v. International Association of Fire Fighters, AFL-CIO,Local 1589, 119 R.I. 506, 380 A.2d 521 (1977)). Conclusional or *Page 6 
insufficient evidence warrants the reversal of a zoning board's decision. Hopf v. Bd. Of Review of City of Newport, 120 R.I. 275,230 A.2d 420 (1967).
Our Supreme Court has instructed that this Court should not "search the record for supporting evidence or decide for itself what is proper."von Bernuth v. Zoning Board of Review, 770 A.2d 396, 401 (R.I. 2001) (quoting Irish Partnershio v. Rommel, 518 A.2d 356, 359 (R.I. 1986)). Rather, this Court may "remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced. . . ." Section 45-24-69.
 Decision of the Board
Petitioner claims that the Board exceeded its statutory power and jurisdiction by finding a merger of the lots on the subject parcel. To find the merger, Plaintiff argues that the Board interpreted the intention of the parties who preceded her in title. Petitioner maintains that the Board's decision was affected by error of law and claims the Board acted beyond its statutory authority in rendering said decision. Petitioner argues that the authority to interpret deeds is not one of the Board's enumerated powers. Therefore, the Petitioner contends, because the power to interpret deeds is not delineated in its enabling legislation, the Bristol Zoning Board of Review acted beyond its power and in excess of its jurisdiction when it considered the intent of Petitioner's predecessors' deeds. Petitioner also claims that the zoning doctrine of merger by declaration or consolidation is not recognized by the Supreme Court of Rhode Island; thus, the Board exceeded its authority by relying on the doctrine to deny Petitioner's buildable lot determination. Furthermore, Petitioner contends that her predecessor's Sewer Assessment Homesite Declaration is not dispositive relative to the merger of the lots. Petitioner also argues that *Page 7 
the prior description of her multiple lots as one parcel does not merge those lots by declaration or consolidation.
In its decision, the Board determined the subject lots had merged pursuant to the doctrine of merger by consolidation or declaration. The Board noted that Petitioner's lots had merged into one parcel which could not be unmerged without applying for subdivision. The Board contends that the previous deeds of the subject parcel and the Sewer Assessment Homesite Declaration both reference Petitioner's parcel as one lot. Accordingly, the Board maintains that a merger of the five lots, which renders lots 25 and 26 merged with lots 23, 24, and 102, has occurred. Thus, the Board reasoned, the merger of the parcel's lots prevents lots 25 and 26 from being a separate buildable lot absent subdivision approval from the Board.
Bristol Town Code § 28-221 (c) addresses the merger of multiple nonconforming lots of record in residential zones. Section 28-221 (c) (1) mandates that
 [a]djacent lawfully established undeveloped lots in the same ownership in the R-80, R-40, and R-20 zones which have less than the minimum area or frontage requirements shall be deemed to be merged together as one lot by operation of this chapter. Any such merged lot shall not be divided, except as follows:
 a. Any such division shall be deemed to be a subdivision and subject to all requirements of the subdivision regulations of the town, including without limitation, the requirements for planning board approval.
Section 28-221 is the only residential merger statute in the Bristol Town Code. The statute merges only adjacent undeveloped lots in common ownership which have less than the minimum area requirements. Unlike other towns' merger provisions, Bristol did not enact a more rigid provision which would merge both undeveloped and developed lots. Instead, Bristol enacted the less stringent merger ordinance. Therefore, lots 25, 26, *Page 8 
and 102 would merge together under § 28-221 (c) (1) because they are undeveloped, but lots 23 and 24 would not merge because they are developed. Thus, there has been no statutory merger of lots 25, 26, and 102 with lots 23 and 24.
In its decision, the Board found that Petitioner's lots merged by consolidation. For support, the Board relies on McKee v. Reid, No. 89-4026, 1990 R.I. Super. LEXIS 105 (May 2, 1990).[1] InMcKee, a Lincoln resident wished to subdivide a merged lot which had formerly been three lots. The McKee Court held that the petitioner could not subdivide his lot because the three lots had been previously merged. Though the court made no mention of the doctrine merger by consolidation, the court noted that, "[i]n 1979 a prior owner consolidated the three separate lots by deed." Id. at 2. In the instant case, from the 1950 conveyance to the 2004 conveyance to Petitioner, the subject parcel has been described by the Pozzis and Mathieus as five individual lots which make up one parcel. Since the Rhode Island Supreme Court has not recognized the doctrine of merger by consolidation, it was an error of law for the Board to find such a merger had occurred with Petitioner's lots.
The Board also argues that description of Petitioner's parcel by a single metes and bounds perimeter in the Pozzi and Mathieu deeds supports the merger of Petitioner's lots. The Board contends that this successive description of the subject parcel by a single metes and bounds perimeter description evidences the intent of the prior owners to merge the five lots. Petitioner contends that a single metes and bounds perimeter description of the five lots does not sever the unique identity of the individual lots. *Page 9 
Both the Board and the Petitioner rely on Logan v. City ofBiddeford for support. 722 A.2d 1183 (Me. 2001). In Logan, the petitioner and the zoning board disagreed over the significance of a deed's singular description of one parcel which contained multiple lots relative to a finding that the lots had merged. The Logan Court held that "a scrivener's device of describing lots by using an outside perimeter does not destroy the separate character of the lots that existed at the time of the conveyance." 722 A.2d at 1186.
The Board also draws support for its merger finding in the parcel's 1988 Sewer Assessment Homesite Declaration. (Pl.'s Ex. A.) This Declaration was filed by Victor G. Mathieu, and its sole purpose was to treat the five lots of 53 Mulberry Street as one homesite for the assessment of Bristol's sewer taxes. The Board contends that the description of the subject property as one homesite evidences the intent of Mr. Mathieu to treat the entire parcel as one lot. However, our Supreme Court has previously addressed the use of a tax assessment lot for the purpose of taxing multiple adjacent lots in common ownership. The court in Sanfilippo, et al. v. The Board of Review of the Townof Middletown, 96 R.I. 17, 20, 188 A.2d 464, 466 (1962), held that
 [t]he creation of tax assessors' lots is primarily for the purpose of aiding [the assessors] to identify a taxpayer's property in order to place a value upon the same for tax purposes. As the court said in Raposa v. Guay, 84 R.I. 436, at page 443, 125 A.2d 113: `Such plats are made solely for the convenience of the assessors in performing the duties of their office.' [. . .] [T]ax assessors' plats and the method of designating lots thereon are not conclusive in determining the question whether separate lots so designated and separated constitute one lot for zoning purposes.
Therefore, the Board's contention that the Sewer Assessment Homesite Declaration contains evidence of Mr. Mathieu's intent to consolidate the five lots of 53 Mulberry *Page 10 
Street is not supported by Rhode Island case law. See also Smith v. TheZoning Board of Review of the Town of Westerly, et al., 111 R.I. 359,302 A.2d 776 (1973) (finding that one parcel of land, which contained four lots that were platted separately in 1873, retained its identity as a four-lot parcel despite being taxed as a single parcel). Accordingly, it was an error of law for the Board to base its merger finding on the Sewer Assessment Homesite Declaration.
This Court finds that the Board erred as a matter of law and acted in excess of statutory authority by finding merger by consolidation. The Board's statutory authority is derived from G.L. (1956) § 45-24-57, "Administration — Powers and Duties of Zoning Board of Review." Section45-24-57 (1) (i) provides that a zoning board shall have the power and duty "[t]o hear and decide appeals in a timely fashion where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative officer or agency in the enforcement or interpretation of this chapter, or of any ordinance adopted pursuant hereto." The Board is further empowered under §45-24-57 (1) (viii) "[t]o hear and decide other matters, according to the terms of the ordinance or other statutes, and upon which the board may be authorized to pass under the ordinance or other statutes."
With respect to a zoning board's limited powers, as our Supreme Court earlier noted in Hassel v. Zoning Board of Review of the City of EastProvidence, 108 R.I. 349, 275 A.2d 646 (1971), a zoning board
 [I]s a wholly statutory creature which has been assigned a definite, but limited, role in the administration of the zoning law, and it is without powers, rights, duties or responsibilities save for those conferred upon it by the Legislature. Reynolds v. Zoning Board of Review, 96 R.I. 340, 343, 191 A.2d 350, 352-53; Noonan v. Zoning Board of Review, 90 R.I. 466, 470, 159 A.2d 606, 608. *Page 11 
 Specifically the duties assigned to a zoning board are to hear and determine appeals from decisions of administrative officials charged with the enforcement of zoning legislation, and, in addition to pass on applications for special exceptions or variances. Olean v. Zoning Board of Review, 101 R. I. 50, 220 A.2d 177; §§ 45-24-13
and 45-24-19. These are its only responsibilities. It has no others for the limits on its authority have been circumscribed as well as proscribed by the Legislature. 275 A.2d at 648.
Therefore, zoning boards are given only the jurisdiction to apply zoning law and the zoning ordinances. Zeilstra v. Barrington ZoningBoard, 417 A.2d 303, 309 (R.I. 1980). The power to interpret deeds and to determine the intent of a party is vested in the courts.
A further review of the record also evidences that Paul Ryan, Esquire, the Bristol Town Solicitor, advised the Board as follows
 whether the Doctrine of Consolidation does or doesn't exist, is not something a Zoning Board even has the authority to do, because the Zoning Board's a statutory provision. And as one of the drafters of the merger section, we did not intend to give Zoning Boards the ability to say that some piece of property was consolidated. Certainly the Court has that authority, but we did not[.] (Tr. at 11.)
A zoning board's failure to heed such cautionary words of its own legal advisor was discouraged in Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001). The Sciacca Court cautioned the zoning board that
 [I]t would be difficult to sustain the board's decision in any event in view of the inadequate record kept by it and also because of the inadequacy of the statement summarizing its decision. It might be appropriate to suggest again that, because of the complicated legal questions incident to all zoning hearings, zoning boards should avail themselves of the legal service of their municipal legal departments. This would, in our judgment, aid the boards in the administration of justice to all who come before them. Id. at 585-586. (quoting Souza v. Zoning Board of Review of Warren, 104 R.I. 697, 699-700, 248 A.2d 325, 327 (1968)). *Page 12 
Here, because the Board acted in excess of its statutory authority, its decision was affected by error of law.
 Conclusion
The Board's decision to deny Petitioner's request for lots 25 and 26 to be declared a buildable lot exceeded its statutory powers and was affected by error of law. The Board acted in excess of its statutory authority by interpreting the intention of the predecessor parties to Petitioner's deed and failing to apply the law of zoning. Accordingly, this matter is remanded to the Board, so that it may make further findings of fact consistent with this Decision. Jurisdiction shall be retained by this Court.
[1] While this Court finds McKee distinguishable from the instant case, this Court is mindful that Superior Court cases are not binding precedent on this Court's decision. *Page 1