MICHAEL V. SANFILIPPO *et al. vs.* THE BOARD OF REVIEW OF THE TOWN OF MIDDLETOWN.

MARCH 4, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is a petition for certiorari to review the decision of the zoning board of review of the town of Middletown granting the application of Theresa M. Weller for an exception permitting her to build a private garage with stabling space for one horse on an unimproved parcel of land on Purgatory Road as an accessory building to her dwelling which is located on the opposite side of the road. Pursuant to the writ the pertinent records have been certified to this court.

Mrs. Weller's dwelling is located on the northerly side of Purgatory Road, a public highway, on a parcel of land acquired by her in 1949 and described as lot No. 51 on tax assessor's plate No. 116 NE. She has resided there since 1949. In 1958 she purchased a parcel of land on the south-

erly side of that road, opposite the lot on which her dwelling is located and described as lot 183 on assessor's plate 116 NE. In 1960 she purchased another parcel described as lot 184 on assessor's plate 116 NE and located next to and south of lot 183. All three parcels are in an area zoned "Residence B District:—Without Public Sewers," lots 183 and 184 being unimproved land except for the garage and stable constructed since the commencement of these proceedings.

In the application for an exception Mrs. Weller has treated lots 183 and 184 as one parcel. For the purposes of this case we shall do likewise. Lot 183 is located at the corner of Purgatory Road and Easton avenue. It has a frontage of 230 feet on Purgatory Road and, together with lot 184, measures 390 feet on Easton avenue. The westerly line of lot 183 has a depth of 276.9 feet and its southerly line measures 210.7 feet. The northerly line of lot 184 measures 121.1 feet and abuts a part of the southerly line of lot 183. The westerly line of lot 184 measures 98.5 feet and its southerly line measures 120 feet. She specifies in the application that she is seeking the exception under article II, section 2 D, of the ordinance.

Article II, section 2, relates to use regulations in residence districts and section 2 D provides for area and yard exceptions. It appears from the application that Mrs. Weller is seeking an exception under paragraph 4 of section 2D which reads as follows:

> "An accessory building to an existing residential structure is permitted, provided that no such accessory building shall be in the front yard or within 3 feet of the side lines or rear lines of the lot. Accessory buildings on the same lot with the building to which they are accessory, permitted under this ordinance, shall be private garages or a building for customary home occupation. Other accessory buildings may be permitted subject to approval by the Board of Review."

To repeat for the sake of clarity, Mrs. Weller requests an exception under article II, section 2 D, paragraph 4, for a permit to build a garage with stabling space for one horse on lot 183 as an accessory building to her dwelling which is located on lot 51 on the opposite side of Purgatory Road, a public highway. The board heard her application together with two appeals from the action of the building inspector granting a permit for the building in question. They sustained the two appeals and reversed the action of the building inspector. Those appeals are not involved in this case. The only matter before us is the legality of their decision granting an exception to Mrs. Weller permitting her to construct the proposed building in accordance with her application.

The petitioners are neighboring property owners. They object to the board's action and have urged several grounds to support their claim that the grant of the exception is invalid. In our opinion there is merit in their contention that the proposed building, being an accessory building, could be permitted under the provisions of paragraph 4 of section 2 D only if there was an existing residential structure on the lot in question. Stated another way, under the ordinance the board had authority to grant the exception only if the accessory building was on the same lot with the dwelling.

Article II, section 2 D, paragraph 4, which we have quoted, clearly provides that accessory buildings must be on the same lot with the building to which they are accessory. In Article I, section 5, of the ordinance, the word "Lot" is defined as: "The plot or parcel of land on which a principal building and its accessories are placed, together with the required open spaces." In the same section the words "Accessory Use or Accessory Building" are defined as: "A subordinate use or subordinate separate building customarily incident to and located on the same lot with the main use or building, and that is not within the framework

and walls of the main building. (As Amendment March 9, 1959)."

It is clear from the foregoing that the ordinance clearly and unequivocally contemplated the location of accessory uses and buildings on the same lot with the main use or building. Indeed, in its decision the board concedes that an accessory building must be on the same lot with the main building and they granted the exception on the basis of their finding that lots 51, 183 and 184 in fact constituted one lot within the meaning of the ordinance. They based such finding on the fact that Mrs. Weller considered the three lots as a single residential establishment and they stated that from their own view of the premises the three lots should be so considered.

In our opinion the evidence does not support their finding on this point. We agree with the board's statement that the creation of tax assessors' lots is primarily for the purpose of aiding them to identify a taxpayer's property in order to place a value upon the same for tax purposes. As the court said in *Raposa* v. *Guay,* 84 R. I. 436, at page 443: "Such plats are made solely for the convenience of the assessors in performing the duties of their office." We also agree with the board's contention that tax assessors' plats and the method of designating lots thereon are not conclusive in determining the question whether separate lots so designated and separated constitute one lot for zoning purposes.

What is a "lot" within the meaning of the ordinance is a question of fact. Our conclusion that the parcels involved in this case do not constitute a lot within the meaning of the pertinent sections of the zoning ordinance is not based on the fact that the lots are designated as separate lots on the assessors' plat. On the contrary, we have arrived at our conclusion on the basis of the undisputed physical facts in the record. It may be true, as the board contends, that very often landowners seek to improve their

holdings by buying land immediately adjacent to land they own in order to gain more privacy. But that is not the situation in the case at bar. The parcel designated as lot 183 is not immediately adjacent to the parcel on which the dwelling is located. A public highway separates lots 51 and 183. No records of land evidence of the town show that these parcels, lots 51 and 183, are, or ever were, one lot or part of one parcel. In short, the physical facts completely destroy the board's finding, and therefore such finding of fact is without legal evidence to support it. It is a mere arbitrary conclusion.

We have carefully examined the cases cited by the board in support of their finding that these parcels constituted one lot. *Village of St. Louis Park* v. *Casey*, 218 Minn. 394, is clearly distinguishable on the facts. The lots involved in that case were contiguous and abutted each other. They were not separated by a public highway. *Schack* v. *Trimble*, 48 N. J. Super. 45, and *Edwards* v. *Derrickson*, 28 N. J. L. 39, do not support the board's position and therefore require no further discussion.

For the above-stated reasons it is our opinion that the board erred in holding that the three parcels constituted one lot or that the parcel designated as lot 183 was part of lot 51 within the meaning of the ordinance and, therefore, they exceeded the authority conferred by the terms of the ordinance. In the circumstances they had no jurisdiction to grant the exception. *Paterson* v. *Zoning Board of Review*, 80 R. I. 494. Since the determination of this issue is decisive and dispositive of this petition, we do not deem it necessary to consider other issues raised by the parties.

The petition for certiorari is granted, the decision of the respondent board is quashed, and the records certified to this court are ordered sent back to the respondent board with our decision endorsed thereon.

*Moore, Virgadamo, Boyle & Lynch, Salvatore L. Virgadamo,* for petitioners.

*Corcoran, Peckham & Hayes, Edward B. Corcoran,* for respondent.