302 A.2d 776.

Isaac G. Smith, Jr. *et ux. vs.* The Zoning Board of Review of the Town of Westerly *et al.*

APRIL 9, 1973.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

360

PAOLINO, J. This is a petition for certiorari requesting this court to review a Superior Court judgment reversing a decision of the Westerly Zoning Board of Review which upheld the issuance of a building permit for a shopping center on certain land owned by the petitioners.[1]

Before reciting the travel of this case we believe it will be helpful to describe the land which is the subject matter of this cause. The petitioners, P. Edward Capalbo and his wife Gemma A. Capalbo, are the owners of certain real estate in the town of Westerly designated as lots 1, 2, 29 and 30 on a map entitled "Map of Building Lots formerly belonging to the Orlando Smith Est. now belonging to Edward W. Smith, surveyed and drawn by G. T. Lanphear, C. E. 1873, revised 1950." All of the lots are adjacent and contiguous to each other and abut each other. They form a large tract of land bounded on the west by Granite Street, on the north by Cross Street, on the east by Longvue Ave-

---

[1]The petitioners here are P. Edward Capalbo and Gemma A. Capalbo.

nue and on the south of lots 29 and 30 by property owned by Isaac G. Smith, Jr. and Gertrude Smith, hereinafter referred to as the remonstrants in this action.

The petitioners acquired these lots in four separate transactions from June, 1963 to January, 1970, subsequent to the passage of the Westerly zoning ordinance, ch. 266, passed July 19, 1962 and entitled: "An Ordinance in Amendment of Chapter 22, entitled 'Zoning' as amended." These lots are shown as separate lots on the Smith plat and on the tax assessor's plat of Westerly. They were assessed separately and taxed separately.

Lots 1 and 2 are located in a B-2 district, a business zone. Lot 29 is entirely in an R-2 residential district.

Lot 30 is a split lot, a portion of it being in the B-2 district and another portion in the R-2 district. The district boundary line shown on the official zoning map is situated a distance of 75 feet westerly from the westerly boundary line of Longvue Avenue, and runs southerly from Cross Street a distance that is in dispute between the parties. This district boundary line divides the B-2 district and the R-2 district and is situated 5 feet westerly of the boundary line between lots 29 and 30, and lies in lot 30.

Isaac G. Smith, Jr. and Gertrude Smith, the remonstrants, own land adjacent to petitioners' lots 29 and 30. This property comprises lots 31 and 32 on the Smith plat.

The travel of the case is as follows. On August 6, 1971, Dr. P. Edward Capalbo filed an application with the Westerly building inspector for a permit to build a shopping center on the land described above according to plans submitted with the application. The application describes the street location as "Granite & Cross Streets" and the plat and lot numbers as "Map of Orlando Smith Est. Lot No[s]. 1, 2, 29 & 30."

On August 12, 1971, a building permit, signed by the Westerly building inspector and approved by the zoning

inspector, was issued to P. Edward Capalbo authorizing the erection of a shopping center on "Lot No[s]. 1-2-29 & 30" on the Smith plat. The permit provided that the building operations were to be done in accordance with the application on file in the building inspector's office and subject to all the provisions of the building ordinances of the town of Westerly.

On August 20, 1971, the remonstrants appealed the decision of the building inspector to the Westerly zoning board of review. The board held a hearing thereon, and thereafter, on November 17, 1971, filed a decision upholding the grant of the building permit, but provided that there be no exits or entrances on Longvue Avenue. The board made the following finding of facts:

"1. The official zoning map of the Town of Westerly is that map on file in the office of the Town Clerk in said Westerly.

"2. That the decision of the Zoning Inspector was based in part on a purported copy of said official map which said copy in fact differs in dimension from the official zoning map.

"3. That P. Edward Capalbo and Gemma A. Capalbo are the the owners of said lots 1, 2, 30 and 29, having acquired each lot in separate transactions from January 10, 1966 thru on or about January 15, 1970.

"4. That said lots 1 and 2 lie totally in a B-2 zoning district.

"5. The B-2 zone extends into Lot 30 a distance of 62 feet—the remaining portion of said lot 30 lies in an R-2 zoning district a distance of 13 feet.

"6. Said Lot 29 lies totally in an R-2 zoning district.

"7. That no testimony was presented at the hearing by appellants that they were the persons aggrieved and thus entitled to take an appeal.

"8. That a shopping center is not a permitted use in an R-2 zone."

On the basis of such findings the board held that, under

ch. 266, sec. IX of the Zoning Ordinance of the Town of Westerly, petitioners " * * * may extend for fifty (50) feet and use said 50-foot extension as B-2 property from the easterly termination of the B-2 zone."

The board based its decision on the following provision in sec. IX of ch. 266 which reads:

"Where a lot lies in more than one district, the regulation of either district shall apply, except that, uses permitted in one district may not extend more than 50 feet into the other district."

On November 19, 1971, remonstrants appealed to the Superior Court for Washington County by filing a complaint in accordance with the provisions of G. L. 1956 (1970 Reenactment) §45-24-20. In their reasons of appeal they challenge the legality of the board's decision on numerous grounds, including the following: the decision is in violation of the provisions of the Westerly zoning ordinance, ch. 266, as amended, and in excess of the authority granted to the board by the ordinance; the finding of fact that remonstrants were not aggrieved persons in light of the evidence was an error of law; the decision was arbitrary and capricious; the board failed to properly apply the provisions of sec. IX of ch. 266; and the board failed to take into account the evidence from the official zoning map that the B-2 zoning district extends southerly from Cross Street in lot 30 only a distance of 75 feet.

In their prayers for relief remonstrants did not seek a total revocation of the permit granted nor a complete reversal of the board's action. They merely prayed for relief from those parts of the decision which they claimed were unlawful. They did not object to the board's decision with regard to the exits and entrances on Longvue Avenue. They sought the following specific relief, namely, that the permit as to that portion of the building, off-street parking and use in violation of the zoning ordinance be revoked; that

petitioners be ordered to remove from the premises that portion of any structure or improvement on said premises in violation of the ordinance;[2] and that pending the Superior Court hearing and adjudication, petitioners be enjoined from proceeding with any further construction and use for business purposes on any portion of lots 29 and 30.

The case was heard before a justice of the Superior Court. The record consists of numerous exhibits and the testimony of several witnesses who were called by the opposing parties. It appears from the record that the shopping center has been substantially completed, that a part of the building is on lot 30, and that parking spaces for motor vehicles are set up on various parts of the premises, including lots 29 and 30. The evidence is both confusing and conflicting. There is a conflict in the evidence as to how far southerly from Cross Street the district boundary line dividing the B-2 district and the R-2 district runs. There is also a dispute as to whether the land in question is one lot or four separate lots. Additionally, there is a dispute as to whether sec. IX of ch. 266 and sec. 21 of ch. 22 are applicable here.

After the hearing the trial justice filed a written decision reversing the decision of the board. Relying on our opinion in *D'Almeida* v. *Sheldon Realty Co.*, 105 R. I. 317, 252 A.2d 23 (1969), she held that remonstrants were persons aggrieved within the contemplation of §45-24-20 and therefore entitled to file an appeal in the Superior Court. After discussing her duties under §45-24-20, she reviewed the record before the board, including its decision, and she also reviewed the exhibits and testimony presented in the Superior Court.

With respect to the district boundary line which divided the B-2 and R-2 districts she observed that an examination of the official zoning map clearly shows that it commences

---

[2]See *Town of Lincoln* v. *Cournoyer*, 95 R.I. 280, 286-87, 186 A.2d 728, 731-32 (1962).

75 feet west of Longvue Avenue. This fact is not in dispute. Then, relying on the testimony of Clarence K. Dion, who was called as a witness by remonstrants, the trial justice found that the district boundary line proceeds southerly from Cross Street for 80 feet, then proceeds west for 75 feet, and then goes southerly for a distance not material here. She noted that Mr. Dion is a registered engineer and that he drew the official zoning map of the town of Westerly.

The trial justice next discussed the split-lot provision in sec. IX of ch. 266 of the Westerly zoning ordinance. It was apparent to her, she said, that the board treated the land in question as four separate parcels. However, since petitioners argued in the hearing before her that the land in question was, in fact, one large parcel, she said she would treat both propositions even though she considered the land in question as four separate lots.

In considering the land as one parcel, the trial justice said:

"If the land is treated as one parcel, the building starts west of the boundary line in a business district and extends easterly crossing the boundary line into a residential district. A shopping center is a permitted use in the business district but not in the residential district. However, utilizing the 'split-lot' provision, the shopping center can extend fifty (50) feet beyond the district boundary line. It is apparent from appellants' Exhibit E that the shopping center extends more than fifty (50) feet into the residential zone. This is a violation of the Westerly zoning ordinance."

In treating the land as four separate parcels, the trial justice spoke as follows:

"If the land is treated as four separate parcels, the lots split by the boundary line are lots 1 and 2 and 30. (See appellants' Exhibit E). The shopping center can extend fifty (50) feet beyond the boundary line in an easterly direction. However, in the instant case,

fifty (50) feet beyond the district boundary line in lots 1 and 2 lies in a *separate* lot, viz. lot 30, and is not permissible because it crosses a lot line. Additionally, in the instant case, the eastern terminus of the shopping center is in *another separate* lot, lot 29. It is apparent that the 'split-lot' provision cannot be utilized to extend the prohibited use more than fifty (50) feet into the residential district and across two (2) separate lots. The 'split-lot' provision allows a use to extend fifty (50) feet into another district, only if the fifty (50) feet is contained within the lot lines. Viewed from a northerly to a southerly direction, the use can extend to a maximum of fifty (50) feet south of the boundary line, provided that lot 30 has at least fifty (50) feet remaining in southerly direction. In its application of this provision the Board was clearly erroneous."

She then concluded that it did not matter whether the land was considered to be one parcel or four separate parcels since the "split-lot" provision had been violated in either instance. In the circumstances she did not consider the other contentions of the parties.

The trial justice's decision was filed on March 1, 1972, and on the same day a judgment on the decision was entered in the Superior Court.

On March 3, 1972, a "Stop Work Order" was issued by the zoning inspector and building inspector.

Then, on March 8, 1972, petitioners filed a motion in this court for leave to file a petition for certiorari and also for certain injunctive relief.

After considering the memoranda of law filed by the parties we granted the motion and ordered the writ to issue forthwith. A majority of the court also issued a restraining order " * * * limiting the stop work order to apply to the easterly 50 foot portion of the building which may or may not be in violation of the town zoning code * * *." Mr. Chief Justice Roberts was of the opinion that the re-

straining order should not issue. *See Smith* v. *Zoning Board of Review,* 109 R. I. 957-58, 289 A.2d 60, 61 (1972).

In their petition for certiorari petitioners state four grounds on which they base their claim that the judgment entered below is erroneous. In substance they allege that the trial justice misconceived and misunderstood the evidence and did not properly apply the pertinent provisions of ch. 266 and ch. 22 of the zoning ordinance.

It may be well to point out at the outset that the writ of certiorari brings up the record of the court below for inspection and review on questions of law only, and any ground for reversal must be found on the face of the record. *Swajian* v. *District Court,* 91 R. I. 403, 407, 164 A.2d 311, 313 (1960); *Dimond* v. *Marwell,* 57 R. I. 477, 480, 190 A. 683, 685 (1937). On certiorari the court does not weigh evidence, but examines the record to determine whether there is any legal evidence or reasonable inference therefrom to support the findings of the tribunal whose decision is being reviewed. *Bassi* v. *Zoning Board of Review,* 107 R. I. 702, 707, 271 A.2d 210, 213 (1970); *Hardman* v. *Personnel Appeal Board,* 100 R. I. 145, 152, 211 A.2d 660, 664 (1965). Thus, we examine the record certified here to determine whether there is any competent evidence to support the trial justice's findings and whether she applied the correct law to such findings.

The first question raised by petitioners is whether their land is one lot or four separate lots within the contemplation of the Westerly zoning ordinance, ch. 22, sec. 27(8) which reads as follows:

"A 'lot' is a parcel of land occupied, or designed to be occupied, by one building and the accessory buildings or uses customarily incident to it, including such open spaces as are required by this ordinance and such open spaces as are arranged and designed to be used in connection with such building. A lot may be or

may not be the land shown as a lot on a duly recorded plat."

In urging that their land is a lot within the meaning of sec. 27(8) of ch. 22, petitioners rely greatly on the testimony of the Westerly zoning inspector and Mr. Nattie Capalbo, a professional engineer, whom they presented as a witness. Both the zoning inspector and Nattie Capalbo testified in substance that the definition in sec. 27(8) could be properly applied to petitioners' land. On the other hand there is evidence in the record which depicts petitioners' land as four separate lots, separately acquired at separate times, subsequent to the enactment of the Westerly zoning ordinance. Confronted with the conflicting evidence on this question, the trial justice concluded that petitioners' land consisted of four separate lots.

In *Sanfilippo* v. *Zoning Board of Review,* 96 R. I. 17, 20, 188 A.2d 464, 466 (1963), we held that "[w]hat is a 'lot' within the meaning of the ordinance is a question of fact." We agree with petitioners' claim that the fact that the lots are separately assessed and separately taxed is not conclusive in determining whether separate lots, so designated and separated, constitute one lot for zoning purposes. *See Sanfilippo, supra* at 20, 188 A.2d at 466 (1963). However, as stated above, there is competent evidence in the record which supports the finding that this parcel of land consists of four separate lots. This finding is supported by the fact that these lots have been platted as separate lots since 1873 and were used as such until construction of the shopping center was commenced by petitioners. Further, it appears that in the application for the building permit, as well as in the permit that was issued, the land is referred to as lots 1, 2, 29 and 30. The trial justice's finding, being supported by competent evidence, will not be disturbed by this court. The cases cited by petitioners are not in point here and therefore require no consideration.

The petitioners next raise the question of the application of the "split lot" provision of ch. 266, sec. IX.

As we have pointed out above, the trial justice, in treating this question, considered both situations, namely, first, if petitioners' land is treated as one lot, and, second, if it is treated as being four separate lots. She found that if petitioners' land is treated as one lot their building extends more than 50 feet into the R-2 residence district and therefore violates the "split lot" provision of the ordinance. This finding, as well as the findings made by her in treating the land as four separate lots, are supported by competent evidence and, therefore, will not be disturbed by this court on certiorari. The petitioners have failed to show that she misapplied the pertinent provisions of the zoning ordinance.

This, as we assume, without deciding, that petitioners' land is one lot within the contemplation of the "split lot" provision of the ordinance, it follows from what we have said above, that she did not err either with respect to her findings of fact or in her application of the law to such findings.

The provisions of ch. 22, sec. 21 of the zoning ordinance, cited by petitioners, are of no help to them. Section 21 reads as follows:

> "Zoning Map Designations. When definite distances in feet are not shown on the zoning map, the district boundaries on the zoning map are intended to be along existing street or property lines or extensions of or from the same. Where the location of a district boundary line is not otherwise determined, it shall be determined by the scale of the map measured from a given line. Where the street layout actually on the ground varies from the street layout as shown on the zoning map, the zoning board may apply the designations shown on the mapped streets in such a way as to carry out the intent and purpose of the plan for the particular area in question."

As we have stated above, the trial justice made a finding of fact as to the location of the district boundary line dividing the B-2 and R-2 districts and, based upon Mr. Dion's testimony, she made a finding of fact as to the length and direction of that line. These findings are supported by competent evidence and therefore must stand.

In light of our conclusion with respect to the issues raised by the petitioners under their first and second main contentions, we do not find it necessary to discuss or consider their other contentions.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, the restraining order granted is vacated, and the record certified to this court is ordered returned to the Superior Court.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Doris did not participate.

*Thornton, Thornton & Naccarato, James D. Thornton, Vincent J. Naccarato*, for plaintiffs-respondents.

*Thomas J. Capalbo*, for petitioners, P. Edward Capalbo and Gemma A. Capalbo.