DECISION
Steven Iadevaia ("Iadevaia" or "Appellant") appeals to this Court from a decision of the Town of Scituate Zoning Board of Review ("Zoning Board" or "Board"). In its ruling, the Zoning Board upheld a Scituate Building Official's ("Building Official") decision denying Iadevaia a building permit and further denied his request for a dimensional variance for minimum lot width. This Court has jurisdiction of Appellant's timely appeal pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Steven Iadevaia is the owner of 9.09 acres ("nine acres") of real estate located just east of Chopmist Hill Road in Scituate. On December 30, 1965, Scituate approved the Town of Scituate Zoning Ordinance ("Ordinance" or "Zoning Ordinance"). The Ordinance depicted the lot as a single, landlocked, nine-plus acre lot identified as Assessor's Plat 35, Lot 24.[1] This was the case despite the fact that a Plat Map exists from 1848 ("Bishop Plan"), identifying the nine acres as two separate lots. (Ex. 1.) *Page 2 
Iadevaia acquired the property from his parents, Joseph and Victoria Iadevaia, pursuant to a deed dated February 26, 1982. The deed described the property by stating:
 "A certain lot or tract of woodland situated in said Town of Scituate and State of Rhode Island, and lying easterly of the Chopmist Hill Road, so-called, and is bounded and described as follows:-Northerly by land formerly of Harley Phillips, but now or lately of Serafino P. Raponi et ux; Easterly by land formerly of James Aldrich, but now or lately of Rhode Island Episcopal Convention The Diocese of Rhode Island; Southerly by land formerly of Russell Arnold, but now or lately of Rosciti Construction Inc.; and Westerly by land formerly of Frank A. Capwell et ux, but now or lately of Nick DelVicario et ux, and contains about nine (9) acres of land.
 However otherwise bounded and described, said lot is comprised of those two certain lots of land on the easterly side of Chopmist Hill Road as are numbered 1 (one) and 2 (two) in the Division of the Estate of Ezekiel Bishop, late of the Town of Scituate, deceased, and recorded in Scituate Land Records in Plat Book 1 at page 19.
 Being the same premises conveyed to these grantors by deed from Vesta M. Fenner, dated October 1971, second parcel, and recorded in the Land Records of said Town of Scituate in Book 81 at page 247." (Ex. 3.)
The record contains the deeds of the property dating back to 1929. (Ex. 15.) All six deeds submitted contain nearly an identical description of the property. The deeds do not show that the two numbered lots mentioned in the deed were ever in the hands of separate owners.
On October 21, 2008, Iadevaia submitted an application for a building permit to the Scituate Building Official. (Ex. 9.) In the application, Iadevaia identified the property he intended to build on as Plat 35, Lot 65 (Lot 65), and encompassing 4.327 acres. The recognition of Lot 65 resulted from proceedings between Iadevaia and the Town of Scituate Planning Commission ("Planning Commission" or "Commission") in June and September of 2006. (Ex. 7.) Although it is disputed as to who initiated the proceedings and for what purpose, it is undisputed that as a result of those proceedings, the Planning Commission granted Iadevaia's *Page 3 
request to replat the nine acres into two separate lots. The front lot — where Iadevaia currently has a single family house and street access — is still recognized as Lot 24, although it now encompasses under 5 acres. Lot 65, the newly recognized lot, is an undeveloped landlocked lot located adjacent to Lot 24.
On October 28, 2008, the Building Official denied Iadevaia's request for a building permit. (Ex. 10.) The Building Official denied the request because Lot 65 has no street frontage.[2] He determined that this deficiency violated the width requirements in RR-120 Zoning Districts in Article IV — Section 3 of the Zoning Ordinance. Article IV-Section 3, entitled Substandard lots ofrecord, provides in pertinent part:
 "Except for lots on recorded plats which have received final approval from the plan commission pursuant to the ordinance and rules and regulations governing and restricting the platting and other subdivision of land, no lot area shall be reduced below the dimensional requirements prescribed for the district in which the lot is located."
Iadevaia appealed the Building Official's denial to the Zoning Board, which held a hearing on January 27, 2009. At the hearing, Iadevaia, through counsel, argued that his appeal should be granted on two related but separate grounds. First, he argued that the Building Official misconstrued the Zoning Ordinance. He maintained that the Zoning Ordinance does not have a frontage requirement and that the Building Official erred in interpreting a lot width requirement to require frontage.
Alternatively, Iadevaia contended — assuming the Zoning Board agreed with the Building Official's interpretation of lot width — that the Zoning Board should grant him a dimensional variance for the landlocked Lot 65. He noted that building a home on Lot 65 is a permitted use *Page 4 
for such property, and believed that without the variance, he would be unable to enjoy the beneficial use of the property.
At the conclusion of the hearing, the Zoning Board voted unanimously to deny both grounds of Iadevaia's appeal. Subsequently, on February 27, 2009, the Zoning Board issued its findings and written decision. The Zoning Board issued the following findings of fact:
 "1. The Town of Scituate Zoning Ordinance was approved on December 30, 1965 and included the written ordinance and the plat maps as of that date. The subject property was depicted as a single, nine-acre lot in those plat maps.
 2. On October 21, 1971 Joseph A. and Victoria D. Iadevaia, husband and wife, purchased a landlocked piece of land consisting of 9.09 acres. (Joseph Victoria Iadevaia are the Applicant's parents and predecessors-in-title.)
 3. On October 25, 1983 Serafino F. and Anna E. Raponi requested a dimensional variance to sell a 50' strip of land to Applicant. The strip of land would be from Chopmist Hill Road to Applicant's land. Applicant's testimony at this hearing was this 50' strip of land was to access his 9.09 acre landlocked piece of land.
 4. On June 21, 2006 and again on September 19, 2006, the Applicant appeared before the Plan Commission and requested that a subdivision of his 9.09 acre parcel into two parcels. The resulting subdivision created a landlocked lot, which is the subject of Case # 1040 and 1041.
 5. On August 26, 2008, the Applicant requested a Dimensional Variance for lot width and a Dimensional Variance for building height; the Applicant withdrew his application without prejudice following a hearing.
 6. On October 21, 2008, the Applicant submitted plans and a building permit application to Mr. Provonsil for approval for the construction of a single-family home on the subject parcel.
 7. Mr. Provonsil denied Applicant's request for a Building Permit in October 28, 2008 correspondence to Applicant. *Page 5 
 8. In Case #1040, Applicant sought an appeal of Mr. Provonsil's denial of a building permit. In Case # 1041, Applicant sought Dimensional Variances for Lot Width and Building Height.
 9. Applicant requested, in essence, approval to construct a single-family home on a landlocked lot in the Town of Scituate. Applicant submitted a proposed easement and maintenance agreement for the subject property. During the proceedings, Applicant was represented by counsel. . . .
 10. Attorney . . . presented the Applicant's case asserting that the Applicant sought to use the property as a single-family residence, a use permitted by right. Applicant also set forth a challenge to the Town's definition of lot width, asserting that the subject property meets the definition. The Applicant, through counsel, argued that the Ordinance does not require lot frontage, nor does it mandate frontage. Applicant asserted that the Ordinance does mandate "lot width" and argued that the Applicant met the definition of lot width.
 11. Mr. Provonsil responded . . . that he denied Applicant's request for a building permit on three (3) additional grounds: 1) Lack of a driveway permit application (not likely an issue under the Board's jurisdiction); 2) No legal means of access to the subject property was submitted; and 3) The subject parcel has no street frontage, and is therefore ineligible for a building permit under Article IV — Section 3 of the Zoning Ordinance.
 12. No one spoke for or against the application (either the appeal or the application for variance) during the public comment portion of the hearing." (Dec. at 1-3.)
Pertaining to Appellant's appeal of the building permit denial, the Zoning Board analyzed the term "lot width" as defined in the Zoning Ordinance for a RR-120 Zone and concluded that the Building Official was correct: "a lot must possess frontage." (Dec. at 6.) Lot width is defined in the Zoning Ordinance as "[t]he horizontal distance between the side lines of a lot measured at right angles to its depth along a straight line parallel to the front lot line at the minimum front setback line." (Scituate Zoning Ordinance, ("Ord.") Article IX. Definitions (45.)) To interpret this definition, the Zoning Board analyzed "front lot line," which is defined as "the lot line *Page 6 
separating a lot from a street right of-way."Id. at Definition 43(a). Based on these two definitions, the Zoning Board reached its conclusion that a lot must possess street frontage.
As for Appellant's alternative argument, the Zoning Board declared that the request for a dimensional variance "fails on its face" because of prior inconsistent actions Iadevaia had taken with the property. (Dec. at 6.) Specifically, the Zoning Board pointed to two events that precluded it from granting the variance. The first of those events occurred in 1983, while the second involved the previously mentioned 2006 meetings with Iadevaia and the Planning Commission.
On October 25, 1983, the Zoning Board granted a variance to Serafino F. and Anna E. Raponi ("Raponis"), neighbors to Iadevaia. (Ex. 5 at 2.) The Zoning Board granted the variance so that the Raponis could sell a fifty foot strip of their land to Iadevaia. At the hearing, Iadevaia testified that he wanted to purchase the fifty foot strip of land to have access to his nine acres of land where he intended to build a house. Id.
Analyzing the 2006 hearings between Iadevaia and the Planning Commission, the Zoning Board — despite Iadevaia's contention that the Planning Commission merely confirmed the independent existence of Lot 65, which dated back to 1848 — proffered that the Planning Commission created a new subdivided lot. The Zoning Board was highly skeptical of the validity of this act by the Planning Commission, unsure as to what the Planning Commission did and why the Planning Commission did it. Nonetheless, the Zoning Board believed the subdivision was immaterial because it determined Iadevaia created the hardship by creating the new landlocked lot and thus was precluded from receiving a variance.
Accordingly, the Zoning Board rejected both grounds for Iadevaia's appeal. It determined the Ordinance's width requirement contemplates frontage, which Iadevaia's property *Page 7 
did not have. Further, it determined a variance for lot width for Lot 65 was not appropriate because Lot 65 was not a legally recognizable buildable lot. Instead, it found that the two lots identified in Iadevaia's deed were only mentioned to identify the one lot's boundary, the one lot that was identified in the 1965 Zoning Ordinance. Alternatively, it found that even if the newly created lot was valid, a variance could not be granted because Iadevaia created the hardship of having a landlocked property by seeking the subdivision before the Planning Commission.
The Appellant timely appealed the Zoning Board's February 27, 2009 decision on March 18, 2009. Appellant also asks for reasonable litigation expenses pursuant to the Equal Access to Justice Act, G.L. 1956 § 42-92-1 et seq.
 II Standard of Review
Section 45-24-69(a) provides this Court with the specific authority to review decisions of town zoning boards. This Court's review is governed by § 45-24-69(d), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Page 8 
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. R.I. State LaborRelations Bd., 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977);see also Mauricio v. Zoning Bd. of Review ofPawtucket, 590 A.2d 879, 880 (R.I. 1991). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Cohen v. Duncan, 970 A.2d 550, 561 (R.I. 2009) (quoting Monforte v. Zoning Bd. of Review of E. Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962)).
Thus, this Court's review of a zoning board's factual findings is undertaken to ensure that a reasonable mind might accept them as adequate to support a conclusion. See Lischio v. Zoning Bd.Of Review of N. Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003);Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981). Regarding questions of law, however, this Court conducts a de novo review. Pawtucket TransferOperations, LLC v. City of Pawtucket,944 A.2d 855, 859 (R.I. 2008).
 III Law and Analysis
Appellant in the instant case asked the Scituate Zoning Board to reverse the town Building Official's decision denying him a building permit because the lot in question did not contain frontage. Further, Appellant — in the event that the Zoning Board concluded the Ordinance did, in fact, require frontage — asked the Zoning Board to grant him a variance for Lot 65, claiming that he will be deprived of all beneficial use of the property if the variance is not granted.[3] The Town of Scituate contends that not only does the Ordinance require frontage, but *Page 9 
also that the lot in question is not a legally buildable lot. Even if it were potentially a buildable lot, however, the Zoning Board maintains that Appellant just recently created this lot and that granting a variance for it would undermine the well-settled rule that a variance will not be granted to one who creates the hardship. See Sciacca v. Caruso,769 A.2d 578 (R.I. 2001).
 A Frontage Requirement
Appellant's initial contention is that the Zoning Ordinance does not have a frontage requirement and that because Lot 65 meets all other Ordinance requirements, he should not have been denied a building permit. Assuming for the moment that Lot 65 is a legally recognizable lot, this Court finds that the lot does not possess frontage as required by the Zoning Ordinance.
"It is a well-settled principle in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance." Mongony v. Bevilacqua,432 A.2d 661, 663 (R.I. 1981). Accordingly, when the words of an ordinance are clear, they must be given their plain and ordinary meaning. See id. at 663.
The Town of Scituate Zoning Ordinance defines lot as "[a]parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title." (Ord. Article IX, Appendix A-Zoning. Definitions at 38 (2.)) The lot width requirement for a RR-120 Zone in Scituate is 300 feet. (Ord. Appendix A-Zoning Art. III, § 1.) Although the Ordinance lists several other dimensional requirements, it does not specifically list a frontage requirement. Nonetheless, the definition of lot width specifically requires the dimensions to be measured *Page 10 
parallel to the front lot line. (Ord. at Art IX (45.)) The front lot line is a lot line separating a lot from a street right-of-way.Id. at (43)(a). Lot 65, as the Zoning Board affirmed, does not contain a street right-of-way and therefore, does not have a front line from which to measure width.
Appellant urges this Court to consider our Supreme Court cases distinguishing width and frontage. This Court notes the cases but finds they are distinguishable and do not stand for the proposition Appellant contends.
In Snyder v. Zoning Board of Westerly, our Supreme Court, in 1964, contrasted the word "width" and "frontage" and determined it "was error to treat them as synonymous."98 R.I. 139, 142, 200 A.2d 222, 224 (1964). Significantly, however, the town ordinance the Snyder Court analyzed did not define the term "width," and thus the Court turned to a 1929 case from the Supreme Court of Montana. The Montana Court, in turn, after noting that the term width was also not defined in the ordinance it was examining, turned to Webster's Dictionary.Id. at 142, 200 A.2d at 224 (citing State ex. rel. Keane v.Bd of Comm'rs of Big Horn County,83 Mont. 540, 273 P. 290, 293 (1929)). It is from those two sources that our Supreme Court looked to define width — when the term was not defined in the town's ordinance — arriving at a definition of "a dimension measured from side to side at right angles to length."Snyder, 98 R.I. at 142, 200 A.2d at 224. Based on that definition and the particular ordinance under review, our Supreme Court held that the ordinance's one-hundred foot width requirement did not necessitate one-hundred feet of frontage.
Again, in Holmes v. Dowling, Jr., our Supreme Court was challenged to interpret a town's lot width requirement. 413 A.2d 95 (1980). This time, however, while recognizing the potential distinction between width and frontage for lots — as in Snyder when lots front on cul-de-sacs — the Court interpreted the zoning ordinance width requirement of one-hundred and fifty *Page 11 
feet to mandate a constant hundred and fifty feet throughout the lot. The Court held the proposed subdivision failed because the lot did not maintain the required one-hundred and fifty feet width throughout the property, specifically lacking it where the lot fronted the street. Notably, the Court concluded that the one-hundred and fifty feet width requirement did not mean an "average width" because such an interpretation would have undermined another ordinance provision that allowed for a reduction in frontage requirements, to sixty feet, for lots fronting on a cul-de-sac.
The principle from the Holmes case is thus not that width must be measured "from side to side at right angles to length," but rather that width should be interpreted by a faithful and "common sense" interpretation of the ordinance in question.Id. at 98. Accordingly, where an ordinance defines a term by its relation to the front lot line, common sense dictates the lot must have a front lot line.
 B The Dimensional Variance
Having determined that the Scituate Zoning Ordinance requires frontage, the Court next addresses the issue of whether the Zoning Board committed reversible error when it denied Iadevaia a dimensional variance for Lot 65. Iadevaia contends the Zoning Board committed reversible error because not only did the denial consist of more than a mere inconvenience, it denied him all beneficial use of his property, resulting in a regulatory taking.[4] *Page 12 
Appellant in the instant matter approached the Zoning Board and asked it to grant him a variance for a lot he claims the Planning Commission recreated as an independent buildable lot two years prior. In support of his application, Appellant presented the Board with a plat map from 1848, an updated plat map — for tax assessment purposes only — from December of 2006, one paragraph of the minutes from one of the Planning Committee meetings, and the broad assertion that based on the 1848 plat map, the Planning Commission recreated the land in question to as it existed back in 1848, as two separate independent buildable lots.
The Zoning Board denied Iadevaia's request, doubting the very independent existence of Lot 65. Further, it found that even if the lot exists, Iadevaia did not satisfy his burden of producing satisfactory evidence that the variance was not needed because of the prior action of the applicant and the desire to realize greater financial gain. See § 45-24-41(c). This Court is satisfied that the Zoning Board's decision did not prejudice substantial rights of the Appellant.
A zoning board of review does not have the authority to divide or regulate the subdivision of land. Noonan v. Zoning Bd. of Reviewof Barrington, 90 R.I. 466, 470, 159 A.2d 606, 608 (1960);see also section 45-23-51. That authority the Rhode Island Development Act gives to local planning boards. Section 45-23-51. It is, however, the job of a zoning board to determine what is a lot for purposes of a zoning ordinance.Smith v. Zoning Bd. of Review of Westerly,302 A.2d 776, 781, 111 R.I. 359, 368 (1973) (citingSanfilippo v. Bd. of Review of *Page 13 Middletown, 96 R.I. 17, 20, 188 A.2d 464, 466 (1963). In the instant matter, the Zoning Board concluded that Lot 65 was not a buildable lot for the purposes of the Ordinance, and this Court believes the evidence before the Board confirms this decision.
 1 Administrative Subdivision
The Zoning Board treated Iadevaia's application to the Planning Commission in 2006 as a subdivision. The Scituate Zoning Ordinance defines subdivision as "[t]he division or redivision of a lot, tract or parcel of land into two (2) or more lots, tracts, or parcels. Any adjustment to existing lot lines of a recorded lot by any means shall be considered a subdivision."[5] (Ord. § 14-27.) Similarly, the Ordinance defines re-subdivision as "any change of an approved or recorded subdivision plat or in a lot recorded in the land evidence records, . . . or that affects any map or plan legally recorded prior to the adoption of subdivision regulations."Id. The evidence before the Board suggested that the Planning Commission granted Iadevaia's request not only to adjust existing lot lines, but also to make a change affecting a map or plan legally recorded prior to the adoption of the subdivision regulations. Accordingly, the Board could have logically concluded that not only did the Planning Commission subdivide Iadevaia's property, but that it did so as a re-subdivision.
While the Ordinance provides for three different methods of subdividing, only one method in the Ordinance mentions re-subdivision. That method is an administrative subdivision, which is defined as the "[r]esubdivision of existing lots which yields no additional lots for development, and involves no creation or extension of streets. Such resubdivision shall only involve divisions, mergers, mergers and divisions or adjustments of boundaries of existing lots." *Page 14 
(Ord. § 14-27.) The Board's bewilderment over the fact that the Planning Commission may have created a new lot for Iadevaia to build on — without ever contemplating the implications of a proposed structure on the lot — likely results from the fact that the Planning Commission never intended to create such a buildable lot. Based on the information Iadevaia presented to the Board and the proceeding subdivision definitions, this Court is satisfied with the Board's conclusion that the Planning Commission's subdivision "did not grant the Applicant the right to apply to the Board for a variance on property he's already using as a single-family residence." (Dec. at 6.)
At his Zoning Board hearing, Iadevaia attempted to negate the Board's disbelief of his independent buildable lot theory by pointing to the December 2006 tax assessment plat map. The Rhode Island Supreme Court, however, consistently holds that plat maps are not conclusive when determining lots of record; and the Scituate Zoning Ordinance echoes this sentiment by requiring the map to be recognized as a separate legal entity for purposes of transfer of title. See Sanfilippo v. Bd. of Review of Middletown,96 R.I. 17, 20, 188 A.2d 464, 466 (1963) (concluding that lot determination within meaning of ordinance is question of fact and not determined by plat designations); Smith v. Zoning Bd. ofReview Westerly,111 R.I. 359, 368, 302 A.2d 776, 781 (1973) (concluding four lots in question were individual lots because lots used separately and acquired in four separate transactions); Hamel Corp. v. ZoningBd. of Review of Tiverton, 603 A.2d 303, 307 (1992) (determining plat plans not necessarily conclusive for determining lots for zoning purposes and turning to actual use of property and contiguous nature of lot). The evidence before the Board, and similarly this Court, does not suggest that the "two lots" were ever owned by more than one owner or that any owner ever treated the lot as separate. Similarly, the evidence does not suggest that by adjusting the tax treatment of the property, the Planning Commission intended to create a separate buildable lot. Rather, the Board *Page 15 
had before it evidence that Iadevaia acquired one lot by deed from his parents, built a house on that lot, received permission to replat his lot by the Planning Commission for administrative purposes, and now seeks to build on an administratively subdivided lot.
Further, the Town of Scituate Zoning Ordinance defines lot as "[a]parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title." (Ord. Article IX, Appendix A-Zoning. Definitions at 38 (2.)) When Iadevaia received his property from his parents, the maps in the Zoning Ordinance identified the land as one lot, and the deed Iadevaia received for the lot described the lot as "said lot," strongly indicating a singular lot. Iadevaia confirmed the belief that he owned one lot when he appeared before the Zoning Board in 1983. At the 1983 zoning hearing, Iadevaia explained he needed his neighbor's property because he intended to build a house on his nine acre lot. While this is not conclusive testimony that Iadevaia only owned one lot, it legitimately raised a question for the Board that Iadevaia owned one lot prior to 2006 and that he built a house on that lot, and that after 2006, he intended to build another house on that same land by subdividing the property. A land owner, however, cannot treat his land one way before the zoning board and then after getting zoning relief proceed to treat his land in an inconsistent manner. See Pascalides v. Zoning Bd. of Reviewof Cranston, 97 R.I. 364, 197 A.2d 747 (1963) (explaining applicant could not claim his lot was separate lots after having land treated as one lot to previously obtain relief before zoning board).
While it is clear that the Planning Commission replatted Iadevaia's property, the record is devoid of any information that it did so because it intended Iadevaia to create another buildable lot on his property. The brief paragraph the record contains — minutes from the second of two Planning Commission hearings — indicates that the Planning Commission was entirely focused *Page 16 
on the tax assessment of the property. (Ex. 7.) To supplement that paragraph, Appellant submitted a tax assessment map created after the Planning Commission hearing. It is well settled that tax treatment of a property is not determinative of whether the property is a buildable lot. Sanfilippo,96 R.I. at 20, 188 A.2d at 466 (affirming tax assessors' plats and the method of designating lots thereon are not conclusive in determining whether separate lots constitute one lot for zoning purposes). This Court finds that the Board's conclusion that the action the Planning Commission took did not create a lot for purposes of the Zoning Ordinance is not affected by error of law and is not clearly erroneous.
 2 Self-Created Hardship
Regardless of how the subdivision is classified, however, this Court finds the Board's finding that Appellant failed to submit satisfactory evidence that he did not create his own hardship because of his prior actions is in accord with the substantial evidence in the record. "An area variance may not be granted to solve the problem of an applicant . . . who wishes to subdivide a lot to create both a standard and a substandard lot." Rozes v.Smith, 120 R.I. 515, 521, 388 A.2d 816, 820 (1978) (quoting 3 Robert M. Anderson, American Law ofZoning, § 18.57 at 299-300 (2d ed. 1977)). An applicant, before a zoning board of review, has the burden of proving that a variance for a substandard lot is not needed because of prior acts of the applicant. Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001) (citingRozes v. Smith,120 R.I. 515, 521, 388 A.2d 816, 820 (1978)). Section 45-24-41(c) provides:
 "In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 * * * *Page 17 
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain."
Prior to Iadevaia approaching the Scituate Planning Commission in 2006, the Scituate Zoning Ordinance — in effect at the time Iadevaia took ownership of his property — identified Iadevaia's property as Lot 24 and containing 9.09 acres of land. In 2006, the Planning Commission granted Iadevia's request to replat his lot and thus subdivided his land. In approaching the Zoning Board to grant him a variance, the Appellant had the burden to submit affirmative evidence that the variance was not needed because of his prior acts. The Board's determined that Iadevaia did not satisfy this burden is not clearly erroneous.
In Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001), a petitioner, in 1997, through a home building company, requested the Town of Johnston Planning Board grant her conditional approval to subdivide her property into two separate subdivided lots. The petitioner formerly owned two adjacent independently buildable lots, but in 1979, the two lots were merged according to a merger provision in the town's zoning ordinance. Although petitioner owned a dwelling on one of the lots, she requested the subdivision and subsequently a variance in order to build another house on the smaller of the recently recreated lots. After she obtained conditional approval to build on the newly recreated second lot, the town zoning board ultimately approved the variance, and the Rhode Island Superior Court approved the decision.
Our Supreme Court, however, disagreed. The Supreme Court held that the petitioner created her own hardship when she applied to subdivide her own land, thus necessitating a variance. Our Supreme Court determined that the planning board's subdivision did not insulate the petitioner from having created her own hardship, noting that "any planning board decision in favor of the applicant is conditional in nature and therefore does not relieve the zoning board *Page 18 
from taking into account the self-created hardship language of § 45-24-41(c)." Id. at 585 n. 9; see alsoSawyer v. Cozzolino, 595 A.2d 242, 247 (R.I. 1991). The Rhode Island Supreme Court believed that not only would the variance undermine the merger provision in the town ordinance, but also it would "evade the threshold showing of hardship that is required to obtain relief from their application through the granting of a dimensional variance." Id. at 585.
The relevant facts in the instant matter are very similar to those of Sciacca.[6] Although the town ordinance inSciacca contained a merger provision, the Sciacca
decision does not rest solely upon the presence of the merger provision, but treats the hardship requirement as an independent issue. Sciacca, 769 A.2d at 585. Notwithstanding, here the Board is not arguing that the lots merged because of a merger provision, but rather that the record contained no indication the two lots were ever separate lots for zoning purposes. Further, the Zoning Board did not rest its decision on a conclusion that the two lots were actually one, but as Sciacca mandates, the Board took into account the self-created hardship statute of our general laws.
Although the Scituate Zoning Ordinance does not contain a merger provision, § 45-24-41(c) requires the Board to look at the petitioner's prior actions before granting a variance. Presently, even if the Planning Commission had contemplated creating a buildable lot, such a subdivision would have been conditional in nature. Further, a property owner is charged with constructive knowledge of a zoning ordinance at the time he or she purchases the property. See 7 Rohan, Zoning and Land UseControls § 43.02[6][c]) (recognizing "purchasers have constructive notice of the zoning restrictions which exist when they buy the land"); *Page 19 
83 Am. Jur. 2d Zoning and Planning § 801 (2009) (noting person who purchases land with constructive knowledge of zoning restrictions in effect at time of purchase create the hardship the restrictions entail). When Iadevaia received his deed, the Zoning Ordinance indicated he had one lot, and Iadevaia acknowledged the same when he testified before the Board in 1983. In the instant matter, not only could the Board not grant the subdivision because the evidence suggested the Planning Commission created an administrative subdivision, but also the Applicant did not satisfy his burden before the Zoning Board in proving that the subdivision was not a result of his prior acts.
 IV Conclusion
After review of the entire record, this Court concludes that the decision of the Zoning Board, affirming the Building Official's denial of Appellant's building permit, was not made upon unlawful procedure, affected by error of law, or clearly erroneous. The decision did not prejudice substantial rights of the Appellant. Accordingly, the Appellant's appeal is denied, and the decision of the Zoning Board, upholding the Building Official's decision, is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] Neither party provided this Court with what would appear to be the official zoning map contained in the Ordinance depicting the lot as such described. Appellant, however, has not challenged this assertion, and consequently, this Court presumes both parties agree the 1965 Zoning Ordinance contained a map depicting the property as described.
[2] The Building Official cited several other technical issues when denying the request, but those issues were not appealed to the Zoning Board and are not presently before this Court.
[3] Appellant, and this Court, are aware that in seeking a dimensional variance for a permitted use the standard is governed by § 45-24-41(d)(2), which provides, "in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." Appellant contends, however, that not only does he meet this standard, but the denial of the variance will deprive him of all beneficial use of the property. SeeLischio v. Zoning Bd. of Review of N. Kingstown,818 A.2d 685, 694-95 (R.I. 2003). The Court need not address this issue, however, because like the Zoning Board, it concludes that the Planning Commission did not create the lot Appellant intends to build on for the purposes of a buildable lot, and that even if it had, Appellant created his own hardship by seeking the subdivision.
[4] The facts before this Court are similar to those that confronted our Supreme Court in DiDonato, Jr. v. Zoning Bd.of Review of Johnston, 104 R.I. 158, 242 A.2d 416 (1968). InDiDonato, the Johnston Zoning Board of Review denied petitioner a variance to erect a one-family dwelling on one of two adjoining lots owned by petitioner. The lot petitioner intended to build on was vacant, while the adjoining lot housed petitioner's residence. The lots were identified on a plat which was recorded prior to the Johnston Zoning Ordinance, yet purchased by a single deed after the Johnston Zoning Ordinance was enacted. The petitioner intended to build the house on an undersized lot, but the Zoning Board denied his application because it concluded there had been a merger of the two lots into a single lot and the division would cause a non-conforming lot which would violate the frontage, area, side-line, and rear-yard requirements.
Petitioner contended the Board's denial deprived him of all beneficial use of the vacant lot and appealed to the Supreme Court. Our Supreme Court side-stepped the issue of merger, assuming, only for the purpose of its analysis, that the land was indeed two lots. The Court stated "[i]nasmuch as the ordinance makes it impossible for lot 386 to be used for any permitted use, it is apparent that petitioner has met the requirement of establishing unnecessary hardship . . . Since the use for which the petitioner has applied is a permitted use for his area under the ordinance, we can only conclude that his construction of a one-family dwelling will in no way violate the public interest. It therefore follows that petitioner, under the aforesaid assumption, is entitled to place a one-family dwelling on lot 386." DiDonato, Jr.,104 R.I. at 163, 242 A.2d at 419; see alsoLischio v. Zoning Bd. of Review of N. Kingstown,818 A.2d 685, 694-95 (R.I. 2003). Notwithstanding this finding, the Court still denied petitioner's appeal.
The Court determined that even if petitioner could prove he could build a house on the lot, petitioner did not prove he could build a house in size greater than allowed by the ordinance. The Court noted "petitioner has shown merely that he would suffer a personal inconvenience in having to house his family in a dwelling which must conform to the lot-line restrictions imposed by the ordinance."Id. at 164, 242 A.2d at 420. The Court, therefore, did not need to address the validity of the lot as it ultimately denied petitioner's appeal.
[5] G.L. 1956 § 45-23-32 (51) defines subdivision as: "[s]ubdivision-[t]he division or re-division of a lot, tract or parcel of land into two or more lots, tracts, or parcels. Any adjustment to existing lot lines of a recorded lot by any means is considered a subdivision. All re-subdivision activity is considered a subdivision."
[6] In Sciacca, petitioner, through her builder, approached the planning board for the express purpose of creating a home on a recently recreated subdivided lot. In the instant matter, the applicant did not present any evidence that he approached the Planning Commission save for the purposes of altering the tax treatment of his property. The reason he did not present any evidence very well may be — as the Town of Scituate contends — because the Planning Board created an administrative subdivision. Without evidence as to why the Planning Commission granted Iadevia's request to replat his land, the Board could reasonably conclude that the Commission believed its action did not affect Iadevia's ability to build on the lot.